In re the Marriage of Karin Louise
(Martin) PORET, Appellant
(Respondent Below),

v.

Craig Charles MARTIN, Appellee
(Petitioner Below).

No. 2–1180S382 (582S174).

Supreme Court of Indiana.

May 7, 1982.

Philip F. Boberschmidt, L. Craig Turner, Quill, Steckler & Boberschmidt, Indianapolis, for appellant.

Kim S. Walker, Miller, Tolbert & Wildman, Logansport, for appellee.

ON PETITION TO TRANSFER

PRENTICE, Justice.

This cause is before us upon the petition of the husband (Appellee) to transfer the cause from the Court of Appeals, Second District, following the reversal of the judgment of the trial court granting the husband's petition for modification of the prior decree awarding custody of the children to the wife (Appellant). Said decision of the Court of Appeals was by an unpublished memorandum filed July 8, 1981.

The petition to transfer is now granted and the aforesaid decision and opinion of the Court of Appeals is vacated, for the reasons hereinafter set forth.

The appeal presents the following issues:

(1) Whether the Trial Court had before it evidence, or inferences therefrom, serving as a rational basis for its finding that a substantial and continuing change in circumstances had occurred so as to make the previously existing custody order unreasonable.

(2) Whether the trial court erred in overruling the wife's motion for summary judgment.

(3) Whether the trial court abused its discretion in requiring the wife to bear the expenses of her visitations with the children.

\*    \*    \*    \*    \*    \*

## ISSUE I

The Court of Appeals reversed the judgment of the trial court, holding that, as a matter of law, there had been shown no change of circumstances, since the issuance of the last custody order, which warranted the grant of a change in custody. Said ruling contravenes a ruling precedent of this Court clearly expressed in *Mikels v. Mikels*, (1967) 248 Ind. 585, 228 N.E.2d 20, wherein it was acknowledged that in order for a change of custody to be warranted from that previously ordered, there must be a change in condition from the date of the last order and that the change must be of such a decisive character as to make the change necessary for the welfare of the child. However, we held, in that case, that the evidence therein was sufficient to sustain a finding of such a change and continued: "If there is any evidence, or legitimate inferences therefrom, to support the finding and judgment of the trial court, this Court will not intercede or interfere and exercise or use its judgment as a substitute for that of the trial court." 248 Ind. at 586, 228 N.E.2d 20.

▪ In this regard, our standard of review is no different from that utilized in other matters wherein the legality of the judgment depends upon the evidence presented at the trial. Our function in appeals such as the one before us has been amply stated as follows:

"Both prior to and after the adoption of the Dissolution of Marriage Act (Ind. Code 31–1–11.5–1, et seq.), the function of an appellate tribunal in an appeal from a custody modification decree has been to determine whether the trial court abused its discretion. *See Marshall v. Reeves*, (1974) 262 Ind. 107, 311 N.E.2d 807 (prior law); *Franklin v. Franklin*, (1976) [169] Ind.App. [537], 349 N.E.2d 210. *See also In re Marriage of Lopp*, (1977) [173] Ind. App. [74], 362 N.E.2d 492. Therefore, we will not reverse the lower court's decision unless it is ' " ' *clearly against the logic and effect of the facts and circumstances before the court,* or the reasonable, probable, and actual deductions to be drawn therefrom.' " ' *Marshall, supra,* 262 Ind. at 107, 311 N.E.2d at 812 (original emphasis; citations omitted.)" *Campbell v. Campbell,* (1979) Ind.App., 396 N.E.2d 142, 143.

The rule is annotated in detail in *Marshall v. Reeves*, (1974) 262 Ind. 107, 311 N.E.2d 807, wherein, on transfer, we adopted the dissenting opinion from the Court of Appeals and affirmed the judgment of the trial court changing the prior custody order in the case remarkably similar to the one with which we are here concerned.

" 'The record in this case contains ample and sufficient evidence from which the trial court could logically conclude that a decisive change of conditions affecting Andrea's welfare had occurred which warranted changing custody.

" 'The record either directly or inferentially shows that Andrea was uprooted from an environment in which she and her father enjoyed a continuing relationship of warmth and affection which provided emotional stability for the child. This vital connection was abruptly severed by Martha without explanation.

" 'This and other conduct by her indicated a determination in her ability or desire to effectively care for Andrea's health and

emotional development. After being discharged from her job Martha carried on an illicit relationship, apparently both in Indiana and Arizona, to which Andrea was exposed. The trial court could well have concluded from the evidence that Martha was unable to cope with her own problems and was indifferent or insensitive to the well-being of Andrea.

" 'Ronald, on the other hand, had improved his situation and could provide a suitable home for Andrea.

" 'In sum, there was evidence indicating a new set of circumstances affecting the welfare of the child." 262 Ind. at 114, 311 N.E.2d 807.

In the case before us, the Court of Appeals predicated its holding upon Ind.Code § 31–1–11.5–22(d) (Burns Code Ed.) which allows the trial court to modify custody provisions only upon "a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." The statute is nothing more than a codification of the case law of this jurisdiction. The words "substantial and continuing," with reference to the change of condition are merely a rephrasing of our case law requirement that it be of a "decisive nature"; and the requirement that it "make the existing order unreasonable" is no different than the case law requirement that the change be "necessary for the welfare of the child."

Neither has there been any change with respect to the appellate standard of review. It is, therefore, for the trial judge to determine whether the change has been so substantial and continuing as to make the existing order unreasonable; and upon an affirmative finding, our function is merely to determine whether or not there was substantial probative evidence supportive of that conclusion. If so, it cannot be said that the trial judge abused his discretion.

Although a change in a custody order must be necessitated by a substantial change in conditions since the order was made, it does not follow that there must be such a change that it compels the change in and of itself. The change, if its effect upon the child is to be properly assessed, must be judged in the context of the whole environment. It is, after all, the effect upon the child that renders the change substantial or inconsequential; and a change that might be regarded as slight or inconsequential in one case might be catastrophic in another. The trial judge, therefore, must consider all circumstances, including those previously weighed, in order to determine, in context, the substance of the change giving rise to the review.

The marriage of the parties was dissolved upon their joint petition in November of 1973. Custody of their sons, then ages five years and three and one-half years was awarded to the wife. The husband was to pay support money for the children and to have them every other week-end, plus Sundays on the alternate week-ends, all in accordance with the agreement of the parties, which the court approved.

On July 8, 1974, the husband filed a petition to modify the custody order, alleging a change in conditions. Upon hearing, it was determined that since the dissolution, the husband, a farmer, had continued to reside in the same farm residence as had been the family home but that he had re-married. His new wife had two children by a former marriage, a son, who resided with his father by agreement of the parents, and a daughter who resided with her mother and new husband, by agreement of the parents. The husband's new wife was willing and able to love and care for the boys and would be a good step-mother to them; and the husband was a fit and proper person to have custody of them.

It was further determined that since the dissolution, the wife had completed college and was employed by a bank in Logansport. While working, she left the children at a daycare center. She was then and had been since March 1974, living and cohabiting with Mark Krantz, with whom she testified she was considering marriage, but that the boys, then five and one-half and four years old, were well cared for and loved by their mother.

Upon that evidence, the court found that there had been no change of such a decisive nature as to warrant removing the children from the wife's custody and awarding full custody to the husband as prayed for. However, the custody provisions were changed to provide " * * * The permanent custody of said minor children remain with the mother, * * *, with temporary custody in the father, * * * during the months while school is in vacation * * *." The order also provided for week-end and holiday visitations for both the husband and the wife during non-custodial periods.

On January 25, 1980, the husband again petitioned the court to grant him full custody of the boys then ages eleven and nine and one-half years. The wife followed, on January 29, 1980, with a petition to modify visitation rights to permit her removal of the children from the jurisdiction of the court and to establish their residence in Phoenix, Arizona. It is the order upon these petitions that is the subject of this controversy. The evidence presented at the hearing thereon in May, 1980 was not controverted.

The husband is still married to his second wife, resides in the same home, still operates the same farm and has, in addition, gone into the feed business. In January of 1976, he and his second wife had a daughter, who is now four years old.

The boys, in accordance with the previous custody order, have been spending their summers and alternate week-ends with their father, as members of the household. The second wife cares for them, as a mother, and loves them. When in this household, they attend Sunday School and Church regularly, participate in Four H Club work, earn and save some money from farm chores and the raising of their own hogs and have attended summer Church camps and athletic camps. Additionally, the husband has taken the initiative to improve their school work.

By contrast, the wife was fired from her job at the Logansport Bank in January, 1975. She did not become married to Mark Krantz, the man with whom she was living at the time of the prior hearing. Instead, they parted company in the summer of 1976, and she moved to Lafayette, where she lived in student housing, drew welfare benefits for dependent children and attended Purdue University.

Following completion of school in 1977, the wife moved into a privately owned apartment in Lafayette. Another man resided and cohabited with her there during that summer but moved out shortly after the boys returned from spending the summer of 1977 with their father. The boys spent alternate week-ends in the household that summer. Marriage was never contemplated between this man and the wife.

Until June of 1977, no man lived in the household, but the wife had several men friends and had sexual relations with some of them. On some occasions, these men stayed in the apartment over night, with the boys present.

In June of 1979 Mark Poret moved into the apartment with the wife and shared her bedroom. He was there when the boys came on their week-end visits and stayed on following their return from their summer stay with their father.

The boys never saw the wife engaging in sexual intercourse with her men friends; however, they would see them, from time to time, in bed together. It was the wife's opinion that the boys had not been affected adversely by her open relationships with her various men friends, although she acknowledged some hostility on the part of the older boy towards Poret and also acknowledged that the boys had missed Mark Krantz after he left the household.

The boys are average or better students and, in general, normal boys for their ages. They do not attend Sunday School or Church when they are with their mother, who expressed the opinion that they did not want to attend at those times.

The wife drinks alcoholic beverages only very moderately. She has, in the past, used some marijuana—but not in about two years. She is employed as a case worker by the Tippecanoe County Welfare Department.

In late January, 1980, following the filing of the husband's petition, the wife and Poret decided to marry and did, in fact, marry on February 29th. Pendency of these custody proceedings did precipitate such plans, although they had been under consideration previously. Poret will be awarded a Master's Degree in electrical engineering in June and has accepted a substantial job in Phoenix, Arizona. He and the wife intend to move there permanently and to take the boys with them. Poret is in good financial condition and has paternal feelings for the boys. He has not been married previously and has no other children. The wife does not plan to seek employment immediately upon moving to Phoenix but does anticipate that she will become employed there.

It is clear, from the foregoing, that the life style of the wife, the advanced ages of the boys and the plan of the wife and her new husband to move them to a distant place, where they would likely be permanently precluded from the theretofore continuing stabilizing influence of the father and stepmother, have combined and are circumstances not contemplated at the time of the ruling on the 1974 custody petition. They are substantial and continuing, so as to render a change in the custody order reasonable, if not, in fact, compelling. Although not controlling, it is important to note that the 1974 order provided: " * * * that said children are not to be permanently removed from the State of Indiana." It cannot be said that there was not substantial probative evidence to support the trial judge's decision; hence it cannot be said that he abused his discretion.

We agree with the Court of Appeals in concluding that a custodial parent's move out of state is not *per se* a substantial change in circumstances such as to make that parent's continued custody unreasonable. However, in so concluding, it appears to have considered the removal of the boys to Arizona in isolation from the relevant circumstances of their lives. Whether or not any given change is substantial must be determined in the context of the surrounding circumstances. If, in context it is likely to beget a consequential end result, it must be deemed to be substantial.

## ISSUE II

The wife's argument upon this issue erroneously concludes that the husband's petition and answer to interrogatories failed to reflect circumstances permitting a change in the custody order. It appears to presuppose that the motion should be granted, unless it can be said that the documents disclose that continued custody in her would be unreasonable as a matter of law. Because of the discretion vested in the trial judge in custody matters, a petition for modification does not readily lend itself to determination on a motion for summary judgment. Such a motion must be denied if the pleadings and other relevant items on file reflect a claim of circumstances which, if found by the court to be true, would permit, not compel, a change to be made. Only if relief could not be granted, within the sound discretion of the trial court, could it be said that the moving party would be entitled to a judgment as a matter of law.

The documents relevant to the motion for summary judgment alleged the essence of the circumstances hereinbefore related and clearly precluded the grant of the motion.

## ISSUE III

The trial court also provided for rights of visitation in the wife three times annually but provided that she should pay all the costs of such visitations. The wife contends that the trial court abused its discretion in this regard and that equity dictates that the husband be responsible for at least one-half of the costs of such visitations. We do not agree.

No evidence was presented regarding the relative income of the parties. There was evidence that the wife is gainfully employed and anticipates being gainfully employed after her move to Phoenix. Her new husband, also, was to be employed at a salary in excess of $25,000.00 per year. The wife and her new husband are responsible only for themselves. The husband, will be

bearing the full load of supporting the boys in addition to his wife and daughter. It appears that the visitations are probably for the wife's benefit, and under all of the circumstances, we see no abuse of discretion in requiring her to pay their costs.

The wife also assigned as error the failure of the trial court to grant her motion for judgment at the conclusion of the husband's evidence. Inasmuch as evidence was presented in the husband's case-in-chief sufficient to sustain his claim, there was no error in denying the motion. Additionally, error, if any, in the denial of such a motion is waived upon the introduction of evidence by the moving party. *Pinkston v. State*, (1975) 163 Ind.App. 633, 325 N.E.2d 497, 499; *Hoosier Insurance Co. v. Ogle*, (1971) 150 Ind.App. 590, 276 N.E.2d 876.

We find no error, the judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.