**Paul E. THOMPSON, Appellant (Respondent),**

v.

**Joyce M. THOMPSON, Appellee (Petitioner).**

No. 48A02–8712–CV–507.

Court of Appeals of Indiana, Second District.

March 7, 1990.

Donald E. Snow, Donald E. Snow & Associates, Greenfield, for appellant.

Joan Bashaw Gregg, Gregg & Bybee, Anderson, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Respondent-appellant Paul Thompson (Paul) appeals from the modification of a custody order, which granted custody of the children to Joyce Thompson (Joyce), and granting Joyce possession of the marital residence.

We affirm.

## FACTS

The facts most favorable to the judgment reveal that on June 12, 1985, the parties' marriage was dissolved. The dissolution decree provided, in pertinent part:

"The Court finds that there was one child born of the parties, namely: Paul Daniel Thompson, born February 27, 1973, and Respondent [Paul] is hereby awarded the care and custody of said minor child, reserving to the Petitioner [Joyce] reasonable rights of visitation. The Court further finds that legal custody of Michael Ray King, son of the Petitioner, who has been raised by the Respondent since the age of five (5) months, shall be shared jointly by Respondent and Petitioner and Michael Ray King shall be allowed to live with the Respondent, if he so chooses. If, at any time, the children wish to live with the Petitioner, the Respondent shall sign over full custody of children without a court hearing. The Court further finds that the Petitioner can see the minor child of the parties for visits and activities anytime he wishes as long as it doesn't interfere with schooling.

The Court further finds that *the control of the property* at 2024 Costello Drive, Anderson, Indiana, *shall be awarded to the Respondent*, but upon the death of either party the property shall go to the survivor. The Court further finds that *the property will remain in both parties names as joint tenants*, and if ever sold profits shall be equally split.

The Court further finds that all medical expenses of the dependent children and other debts shall be paid by the Respondent, until such time as the Petitioner secures suitable employment, at which time the non-insured medical expenses and other debts shall be equally divided between Petitioner and Respondent."

*Record* at 31–32 (emphasis supplied).

Several weeks after the dissolution decree was entered, Joyce returned to the residence and lived with Paul and the children. Paul paid the mortgage payments for the residence. After Joyce had returned to the residence, Joyce and Paul acquired a second mortgage on the residence to repair termite damage. Both Joyce and Paul were liable under the mortgage, but Paul made all of the payments.

After the marriage was dissolved, Joyce had several back surgeries, and was unable to seek gainful employment. She received social security benefits, and had attended vocational rehabilitation sessions in order to become employable. Paul continued to be employed by General Motors' Delco Remy plant, where he had worked for twenty years.

Paul developed a drinking problem, and on several occasions was abusive to Joyce. He occasionally offered the children alcohol, and permitted them to consume it. Joyce testified the boys had developed a "party til you puke" attitude, and she was concerned about their philosophy of life. In May of 1987, at Joyce's demand, Paul left the residence.

Joyce filed a petition to modify the dissolution decree on May 14, 1987. She sought custody of the children, and control and use of the marital residence. Evidentiary hearings were held on July 21 and September 30, 1987, and an *in camera* interview with the children was conducted by the court at the September 30th hearing.

On October 1, 1987, the trial court granted Joyce's petition for modification, and provided:

"This matter having come before the Court for hearing to modify the final decree of dissolution. The Court finds that *there has been a material change in said circumstances*, the decree of dissolution heretofore entered is modified as follows: *Custody of the two minor children is awarded to the wife* reserving to the husband reasonable rights of visitation which shall be no less than two weekends per month and one day each week. If convenient [sic] to the parties and to the children, bearing in mind their school responsibilities. Husband to pay $100.00 per week support commencing Friday October 2, 1987 and each week thereafter. All payments to be made to the office of the Clerk of this Court. Wife is to pay the first mortgage there-

on, including the taxes and insurance. *Husband is to pay the second mortgage thereon until fully amortized and paid. Wife is awarded the use of the family residence and after July 15 of the year in which the youngest child graduates from high school the real estate is ordered sold.* The proceeds of the sale, after the sale and administrative expenses are paid, are ordered divided equally by the parties. In the event that the wife becomes employed wife is ordered to notify the court and counsel of that event and the court may reconsider the amount of support. First mortgage at First Savings and Loan to be paid by the wife. Seceond [sic] mortgage at Associates is to be paid by the husband until fully amortized. Parties ordered and directed to execute such documents as necessary for husbnad [sic] to have tax exemptions of both children for the year 1987. Starting in the year 1988 the parties to execute such documents as necessary for husband to have younger shild [sic] as tax exemption and wife shall have older child as tax exemption. Husband directed to pay Attorney McCarty $75.00 and Attorney Gregg $225.00 within 90 days."

(Emphasis supplied.) *Record* at 49–50.[1]

## ISSUES

Paul presents several issues for our consideration, which we consolidate and restate as:

1. Whether the trial court abused its discretion when it determined there had been a substantial change in circumstances?

2. Whether the trial court erred when it awarded use and control of the marital residence to Joyce?

3. Whether the trial court erred when it ordered Paul to pay the second mortgage?

1. It is not clear from the record whether the trial court included Joyce's child from a previous marriage (Michael) in the support order. In this connection we call attention to *R.D.S. v. S.L.S.* (1980), Ind.App., 402 N.E.2d 30 (Buchan-

## DECISION

ISSUE ONE—Did the trial court abuse its discretion when it determined that there had been a substantial change in circumstances?

PARTIES' CONTENTIONS—Paul argues that the trial court erred in not setting forth specific facts in support of its conclusion that there had been a substantial change in circumstances, that the evidence does not support the trial court's conclusions, and therefore the trial court improperly based its decision on the *in camera* interview with the children. Joyce responds that, absent a specific request, findings of fact are not mandatory, that the evidence sufficiently supports the judge's conclusions, and therefore the trial court did not improperly base its decision solely upon the interview with the children.

CONCLUSION—The trial court did not abuse its discretion.

■ Paul's first contention, that the trial court was required to make specific findings in support of its conclusions, is without merit. It has been determined that in a modification of custody decision, absent a request pursuant to Ind. Rules of Procedure, Trial Rule 52(A), there is no requirement for the trial court to make specific findings of facts in support of its conclusions of law. *Clark v. Clark* (1980), Ind. App., 404 N.E.2d 23; *Campbell v. Campbell* (1979), 182 Ind.App. 661, 396 N.E.2d 142.

■ When reviewing a custody modification decree, we will only reverse if the trial court has abused its discretion. The trial court has abused its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court. If there is any evidence, or legitimate inferences therefrom, to support the finding and judgment of the trial court, we will not substitute our judgment for that of the trial court. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885.

an, J. dissenting), which discusses the various equitable doctrines used to impose the duty of support upon individuals possessing a parental relationship with a child.

The crucial consideration for the trial court, when deciding custody questions, is the best interest of the child. *Wright v. Wright* (1984), Ind.App., 471 N.E.2d 1240, *trans. denied.* A change in custody is proper "only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." Ind.Code 31–1–11.5–22 (1988).

■ An examination of the record reveals sufficient evidence to support the trial court's conclusion that a substantial change in circumstances existed, and that a change in custody was in the best interest of the parties' child.[2]

Joyce testified that Paul had become a heavy drinker, consuming nine to twelve beers per day during the week, and a case per day on weekends. *Record* at 80. She also testified that he had, on at least one occasion, experienced an alcohol related blackout. *Record* at 81–82. Joyce also testified that the police had been summoned on several occasions due to Paul's abusive behavior while under the influence of alcohol. *Record* at 82, 92. She further testified that Paul had given both minor children alcohol on several occasions, and had instilled in the children a belief that "the ideal life would be to work seven to three, come home and drink and party till [sic] you puke or pass out and get up and go to work the next morning." *Record* at 82–83. She also testified that Paul had insisted on visiting the children while he was intoxicated. *Record* at 90–92.

We do not conclude it was illogical or unreasonable for the trial court to determine that a substantial change of circumstances had occurred, and that the best interests of the parties' child would be served by awarding custody to Joyce. Paul, like other appellants before him, would have us reweigh the evidence.

■ Paul focuses on the trial court's *in camera* interview with the children as be-

ing an improper basis for awarding custody of the parties' child to Joyce. While we agree it would be improper for the trial court to base its decision solely upon an *in camera* interview, as we have determined there was sufficient evidence in the record to support the trial court's decision, that decision was not based solely upon the *in camera* interview. *Truden v. Jacquay* (1985), Ind.App., 480 N.E.2d 974.

ISSUE TWO—Did the trial court err when it awarded control and use of the marital residence to Joyce?

PARTIES' CONTENTIONS—Paul contends that the award of "control" of the marital residence to him in the original divorce decree was a division of property, and the trial court improperly modified that property division by awarding the control and use of the residence to Joyce. Joyce responds that the award of control of the marital residence was an award of child support, and not a division of property, and therefore the trial court could properly modify that provision of the original divorce decree.

CONCLUSION—The trial court did not err.

■ Paul would equate "control" with "ownership". The school bus driver is in control of the bus, but doesn't own it. Control is exercised for the benefit of the school children just as control of the family residence in this case is for the benefit of the children.

Indicative thereof is Ind.Code 31–1–11.5–12(c) which provides: "As part of the child support order the court may set apart such portion of the property of either parent, or both parents, as may seem necessary and proper for the support of the child."

An examination of the original dissolution decree also indicates that awarding control of the residence was an award of child support, not a division of property. Paul cites no authority for the somewhat startling proposition that because he was

---

**2.** We observe that the original decree purported to give Paul custody of both the parties' child and Joyce's child from a previous marriage. However, the trial court lacked jurisdiction, in a dissolution proceeding, to adjudicate the custody of a child that is not a child of *both* parties. *State ex rel. McCarroll v. Marion County Superior Court No. 1* (1987), Ind., 515 N.E.2d 1124; *Friar v. Taylor* (1989), Ind.App., 545 N.E.2d 599.

originally given "control" of the residence such award is a property division, by implication making him the owner thereof. The fact is title to the property was left to both Joyce and Paul as joint tenants, with rights of survivorship, by the specific terms of the dissolution decree.

While no court in this state has enumerated the factors which should be considered when determining whether a given award is for support or a division of property, courts in other jurisdictions have distilled several relevant factors for consideration.

■ Among those factors are whether the control of a residence was accepted in return for other property rights. If the control was received as *quid pro quo*, then it should be considered as property and not support. The absence of such a factor militates in favor of a conclusion the award was for support. *Lamp v. Lamp* (1980), 81 Ill.2d 364, 43 Ill.Dec. 31, 410 N.E.2d 31.[3]

The court in *Barlow v. Barlow* (1978), 56 Ill.App.3d 629, 14 Ill.Dec. 411, 372 N.E.2d 422, merely looked to the facts of the case to determine whether the trial court abused its discretion when characterizing the award of control.

We can only conclude the trial court did not abuse its discretion when it modified the original decree's award of control of the residence. The original decree is ambiguous because it is subject to different interpretations. Several factors support the the trial court's interpretation of original decree. Title to the property remained in both Joyce and Paul's names as joint tenants with rights of survivorship. *Record* at 31–32. Also, there was no *quid pro quo* exchanged for the award of control and the trial court considered extrinsic evidence of the intent of the parties when they agreed to the provisions of the dissolution decree. The record shows Joyce did not want to disrupt the children's stable environment with the divorce proceeding, and she felt the custody and living arrange-

ments were in the children's best interest. *Record* at 28.

ISSUE THREE—Did the trial court err when it ordered Paul to pay the second mortgage?

PARTIES' CONTENTIONS—Paul asserts that the trial court erred by ordering him to pay the parties' second mortgage on the family residence, claiming that was an improper award of spousal maintenance. Joyce responds that the trial court did not abuse its discretion because it ordered her to pay the parties' first mortgage on the family residence, and therefore Paul was paying fewer mortgages than he had been originally.

CONCLUSION—The trial court did not err.

■ As to the parties' second mortgage, acquired *after* the marriage was dissolved, we again turn to IC 31–1–11.5–12(c) which allows the court to set apart property of either parent for support of the children. As payment of the second mortgage amounts to no more than a subsequent order of child support, we cannot conclude the trial court erred when it ordered Paul to pay the second mortgage. This conclusion seems a fair interpretation of the broad powers granted trial courts to provide for the best interest of children of the marriage. *See Herron v. Herron* (1983), Ind.App., 457 N.E.2d 564.

Judgment affirmed.

SHIELDS, P.J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent because a property right has been snatched from the grasp of its lawful titleholder. The property right is possession of certain real property. When the Thompsons were divorced, the divorce decree settled once and for all their marital status and their property rights. Custody and the support of children may be an ongoing matter for the trial court to adjust

---

**3.** The Illinois supreme court, in *Lamp*, compared and contrasted various Illinois opinions concerning the characterization of control of the marital residence as either an award of support or property. Other factors, such as whether the decree gave control of the marital residence to the spouse only during the minority of the children, while indicative that the award was for support, were not necessary for the award to be considered support.

from time to time when a substantial change in circumstances indicate that an adjustment is needed, but finality should be the hallmark of the decree as far as property rights are concerned. Support provisions in a decree for divorce should be clearly defined and set apart from the division of property. This was clearly done in the case before us. Before granting the right of possession, the trial court did not find that the divorce decree was ambiguous nor did it indicate that extrinsic evidence was necessary to express the original intent of the decree. The divorce decree rendered by the trial court is clear and unambiguous regarding custody of the children, support, marital status of the parties, and property division. To change the property rights in the original decree, the trial court would have to find fraud. There was none. The trial court should be reversed.

> The orders as to property disposition entered under section 9 of this chapter may not be revoked or modified, except in case of fraud which ground shall be asserted within six (6) years after the order is entered.

West's A.I.C. § 31–1–11.5–17(b) (Supp. 1989)

A review of the original divorce decree vividly underscores the clarity and unambiguous granting of the right to possession without qualification or condition. In its decree, the trial court made provisions for custody of two minor children, one of the marriage and one of a former marriage. After making the provisions for custody and support, the trial court in a seperate paragraph made a division of the property. It should be especially noted that no provision is made for the change of possession of the residence if and when at some later date there should be a change of child custody.

> The Court finds that there was one child born of the parties, namely Paul Daniel Thompson, born February 27, 1973, and *Respondent* [Paul] is *hereby awarded the care and custody of said minor child*, reserving to the Petitioner [Joyce] reasonable rights of visitation. The Court further finds that legal custody of Michael Ray King, son of the Peti-

tioner, who has been raised by the Respondent since the age of five (5) months, shall be shared jointly by Respondent and Petitioner and Michael Ray King shall be allowed to live with Respondent, if he so chooses. *If, at any time, the children wish to live with the Petitioner, the Respondent shall sign over full custody of children without a court hearing.* The Court further finds that the Petitioner can see the minor children of the parties for a visit and activities anytime she wishes as long as it doesn't interfere with schooling.

> *The Court further finds that the control of the property* at 2024 Costello Drive, Anderson, Indiana, *shall be awarded to the Respondent,* but upon the death of either party the property shall go to the survivor. The Court further finds that the property will remain in both parties names as joint tenants, and if ever sold profits shall be equally split. (Emphases added.)

The Majority Opinion relies heavily on *Barlow v. Barlow* (1978), 56 Ill.App.3d 629, 14 Ill.Dec. 411, 372 N.E.2d 422, an Illinois case to support its position, but *Barlow* is easily distinguished on several grounds. First, the *Barlow* Court made a finding that the divorce decree was ambiguous and needed interpretation, and secondly, the *Barlow* Court used extrinsic evidence to finally arrive at its conclusion. In the Majority Opinion, the trial court did not make a finding that the divorce decree was ambiguous nor did the trial court resort to the use of extrinsic evidence. Other features in the *Barlow* decree clearly show that it is inapplicable in the Thompson appeal. For example, in *Barlow* both parties were to pay half the mortgage and tax payments. In Thompson, the only provision made for the wife to pay anything was in regard to "non-insured medical expenses and other debts" when she became employed. To overcome this hiatus, the Majority Opinion makes a finding of ambiguity for the trial court and then proceeds to search the record to discover where the trial court considered extrinsic evidence.

Without any conditions or limitations placed upon the term of possession, the property settlement is fixed, definite, and beyond modification by the trial court. Provisions for support can be intermingled with the division of real property and the right to possession. *Wagner v. Wagner* (1986), Ind.App., 491 N.E.2d 549. However, the language used in the divorce decree must be clear and unequivocal as to the support conditions which encumber those rights which normally flow with the title; otherwise, what appears to be a property settlement is not a property settlement at all, and the divorce decree means nothing but additional litigation. Too, attorneys will never be certain about what advice to give their clients—whether the decree really means what it says. There are many other problems created by permitting such permissive modifications. Future alienation of property and further encumberance of property are just a few of the hazards unnecessarily created.

I would reverse the trial court.