Andrea J. (Mobley) SMITH, Appellant (Petitioner Below),

v.

Thomas G. MOBLEY, Appellee (Respondent Below).

No. 57A03–9001–CV–27.

Court of Appeals of Indiana, Third District.

Oct. 29, 1990.

Howard S. Grimm, Jr., John M. Haecker, Grimm & Haecker, Fort Wayne, for appellant.

Daniel F. Diggins, S. Michele Schaefer, Emerick & Diggins, P.C., Kendallville, for appellee.

STATON, Judge.

Andrea J. Smith appeals the modification of a custody order relating to her two minor children. Her appeal presents us with two issues, which we rephrase as follows:

I. Whether the trial court abused its discretion in modifying custody from Smith to her former husband after she gave notification pursuant to IND. CODE 31–1–11.5–21.1 (Supp.1990) that she intended to move, with the minor children, from the State of Indiana.

II. Whether the trial court abused its discretion in failing to cause the modification of child support to be retroactively effective to the time at which Smith became unemployed.

We affirm in part and reverse in part.

Thomas G. Mobley (Thomas) and Andrea J. Smith (Andrea) were divorced on November 21, 1988. Pursuant to the divorce decree, Andrea was awarded custody of the two minor children. After the divorce, she became engaged to Charles M. Smith (Charles). Later she was transferred to a new job in Columbia, South Carolina. On January 3, 1989, Andrea filed a "Report by Petitioner of Moving Out of the State of Indiana," to which Thomas responded with

a "Verified Petition to Modify Custody." A hearing was held, wherein Andrea stated that she would not be moving to South Carolina, but instead would be joining her fiance in Virginia Beach, Virginia. Temporary custody was awarded to Thomas until Andrea and Charles could get permanently settled in a new home.

On March 31, 1989, Andrea filed her first Motion to Reconsider, alleging that since the hearing, she and Charles had married and established a marital domicile in Virginia Beach. On May 22, 1989, Andrea filed her second Motion to Reconsider, alleging that she and Charles had now established a marital domicile in Nashville, Tennessee. After a hearing on the motions, they were denied and permanent custody was awarded to Thomas, with full visitation rights allowed to Andrea.

## I.

### Custody

Andrea contends that the trial court erred in modifying custody of the minor children from her to Thomas. In determining whether a change of custody is warranted, the trial court's task is to determine whether there has been a change in circumstances which is so substantial and continuing as to make the existing order unreasonable. *Burrington v. Howard* (1988), Ind.App., 521 N.E.2d 371, 372, *trans. denied.* The factors which are to be considered when determining whether to modify custody when the custodial parent indicates her intent to move out of the state include the distance involved in the proposed change of residence and the hardship and expense involved for the noncustodial parent to exercise his visitation rights. I.C. 31–1–11.5–21.1. Upon consideration of these and other important factors relating to the best interests of the child, the determination of whether or not to modify custody lies within the sound discretion of the trial judge. *Pea v. Pea* (1986), Ind.App., 498 N.E.2d 110, 113, *trans. denied.*

We will reverse a trial court's decision to modify custody only upon a showing of abuse of that discretion. *Thompson v. Thompson* (1990), Ind.App., 550 N.E.2d

1332, 1335. An abuse of discretion is evident upon a showing that the court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* If there is any evidence, or legitimate inferences which could be drawn therefrom, which support the finding and judgment of the trial court, we will not substitute our judgment. *Id.*

In support of her contention that the trial judge abused its discretion, Andrea cites *Pea v. Pea, supra.* In *Pea,* the father of the child moved to Illinois. Later, the mother moved several times within Indiana and eventually married a man with which she was cohabiting. The trial court had awarded temporary custody to the father, and after a hearing a year later, awarded permanent custody to the father. The mother appealed, and the Second District reversed, holding that the mother's move within Indiana and a change in the mother's lifestyle did not constitute substantial changes warranting modification of custody.

We do not find the rationale in *Pea* to be controlling in this case, as we find several factors present in *Pea* to be lacking here. First, in *Pea,* both parents moved away from the original marital domicile. *Id.* at 111–112. Thus, any hardship was initiated by both parties. Here, only Andrea has moved, and any hardship on Thomas is solely of her making. Second, the mother and her new husband in *Pea* had established a permanent residence in a home that was fully paid for. *Id.* at 114. Here, Andrea and Charles rent their home, and have exhibited a history of frequent moves. Finally, the mother in *Pea* moved within the state, whereas Andrea moved outside of Indiana to two different states, and her present residence is six-and-one-half hours from Thomas' residence.

Although Andrea correctly points out that a custodial parent's move out-of-state is not *per se* a substantial change in circumstances, *Pea, supra,* at 114, our Supreme Court has stated:

We agree with the Court of Appeals in concluding that a custodial parent's move

out of state is not *per se* a substantial change in circumstances such as to make that parent's continued custody unreasonable. However, in so concluding, it appears to have considered the removal of the boys to Arizona in isolation from the relevant circumstances of their lives. Whether or not any given change is substantial must be determined in the context of the surrounding circumstances. If, in context it is likely to beget a consequential end result, it must be deemed to be substantial.

*Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 890.

■ The trial court could reasonably have found that it was in the best interests of the minor children to reside with their father, because "remaining in Indiana would promote stability in [their] schooling, community, social, church, and familial relationships." *Burrington, supra,* at 373. The move to Nashville could very well beget a consequential end result to any of these crucial relationships, making the change in circumstances substantial and warranting a modification of custody. The Supreme Court in *Poret* observed:

> It is, after all, the effect upon the child that renders the change substantial or inconsequential; and a change that might be regarded as slight or inconsequential in one case might be catastrophic in another. The trial judge, therefore, must consider all circumstances, including those previously weighed, in order to determine, in context, the substance of the change giving rise to the review.

*Poret, supra,* at 888.

The trial judge ordered home studies of both parental homes, heard protracted testimony of both parents and other witnesses, and conducted an *in camera* interview with the older child. The judge's findings indicate that the father was living in the marital residence in Kendallville; that after some problems, the older child had now become well-adjusted to the school environment; that within nine months of the entry of the judgment and findings Andrea had remarried and moved two times; that the children were attending church with their father on a regular basis; and that the children's extended family, including both sets of grandparents, resided in the Kendallville area. In addition, the judge heard testimony that the drive to Nashville took about six-and-a-half hours; that Thomas had the childrens' grandparents watch them while he was at work; and that Andrea and Charles had only rented a home in Nashville, Tennessee for five months prior to entry of the judgment and findings.

The record reveals that the trial judge undertook an exhaustive review of the adequacy of both homes, the capability of both parents, and the interests of the children in order to facilitate his determination. Although that review indicated to the judge that both parents love the children and sincerely desire their custody, he nonetheless found that the best interests of the children would be served by granting permanent custody to Thomas with liberal visitation rights to Andrea. The evidence and the inferences from the evidence support the findings of the trial court: 1) that a continuing and substantial change in circumstances had taken place, and 2) that the best interests of the children required a change in custody to Thomas.

## II.

### Support Payments

Andrea next contends that the trial court erred in failing to make the reduction in her support payments retroactive to the time at which she became unemployed. She further contends that the trial court erred in not abating the support payments for the time during which the children visited her pursuant to the court's June 20, 1989 visitation order. Thomas argues in response that retroactive modification of a support order is not permitted under Indiana law, and therefore the court did not err.[1]

---

**1.** Thomas does not argue on appeal, and apparently did not argue at the hearing, that Andrea voluntarily terminated her employment, thereby precluding a reduction in support payments. *See, Gerber v. Gerber* (1985), Ind.App., 476 N.E.2d 531, 533.

Thomas is correct in observing that retroactive modification of support is error. *Jahn v. Jahn* (1979), 179 Ind.App. 368, 385 N.E.2d 488, 490. Such retroactive modification is erroneous, however, only if it purports to relate back to a date earlier than that of the petition to modify. *Kruse v. Kruse* (1984), Ind.App., 464 N.E.2d 934, 939, *trans. denied; In re Marriage of Wiley* (1983), Ind.App., 444 N.E.2d 315, 319. Thus, a trial court may make a modification of support payments effective as of any date after the filing of the petition. *Wiley, supra,* at 319. This rule serves to avoid encouragement of dilatory tactics and further the purposes of the changed circumstances rule. *Kruse, supra,* at 939.

Support for this rule is found in *Lepper v. Lepper* (1987), Ind., 509 N.E.2d 818. There, the Supreme Court recognized that, subsequent to a hearing on child custody, the noncustodial parent may wish to request another hearing for the purposes of presenting evidence with respect to support payments. It follows that the change in payments may be made retroactive to the time of change of custody in order to prevent inequity. If that were not the case, the party receiving the support payments could gain a windfall by delaying the hearing on the modification of the payments. We will not condone such tactics, nor will we provide the means by which they may be effected.

Here, the petition to modify custody was filed by Thomas on January 20, 1989. Temporary custody was awarded to Thomas after a hearing, and Andrea was ordered to pay $55.00 per week as a support payment. Andrea subsequently filed two Motions to Reconsider. In the hearing on those motions, Andrea presented evidence that her last day of work was February 24, 1989, and that she received two weeks vacation pay after that. The court clearly considered such evidence, because it made a specific finding that Andrea was unemployed, and modified her support payment accordingly to a minimal $15.00 per week, effective September 29, 1989, the date of the judgment entry.

There is no evidence in the record, however, which indicates why the trial court found September 29 to be a significant date with respect to the modification of the support payments. Andrea's testimony revealed she no longer had income after March 10, two weeks after she terminated her employment on February 24. She wrote a letter to the court which was filed on March 22, 1989, indicating that she was unemployed and asking whether she could have her support payments reduced. The letter was taken under advisement.

The March 22 letter had the effect of a petition to modify the support payments, because it signaled to the court an apparent significant and continuing change in circumstances warranting a modification of the previous support order. The trial court had discretion to modify support payments at any time after the letter was filed. The only evidence on the issue presented at the hearing indicated that Andrea was unemployed and had been unemployed since the March 22 "petition." Thus, the court abused its discretion in making the reduced support payments effective as of September 29, rather than March 22.

The judgment of the trial court with respect to the modification of child custody is affirmed. The judgment of the trial court with respect to the determination of child support is remanded in order that the reduced payments may be made effective as of March 22, 1989. Upon remand, the court will make due allowance in assessing support payments for the period of time from June 24, 1989 to July 30, 1989 during which Andrea had custody of the children pursuant to the June 20, 1989 visitation order entered by the court.

MILLER, P.J., dissents to issue I and files separate opinion.

GARRARD, J., dissents to issue II and files separate opinion.

GARRARD, Judge, concurring in part and dissenting in part.

I concur in part I but find that I must dissent as to part II.

In its treatment of the support issue the majority converts what the trial court had discretion to do into a mandate. I believe it does so incorrectly.

Its mandate is complicated by the fact that without citation to any authority it concludes that a letter written by the mother, at a time when she was apparently being represented by competent counsel in this matter, should be taken as a formal petition to modify. It thus again removes from the trial judge the discretion to determine otherwise. As for the majority's concern that the court gave no reason for finding September 29 to be a significant date, it appears to me sufficient that September 29 was the day the modification decree was entered.

I would affirm the trial court.

MILLER, Presiding Judge, dissenting in part and concurring in part.

I respectfully dissent. In this case, the trial court stripped a loving, caring, fit mother of the custody of her two young children, daughter Courtney, age 7, and son Zachary, age 3, merely because the mother, along with her new husband, moved from hometown Kendallville (population approximately 8,000) to Nashville, Tennessee, in order to seek both a better job and a better life for herself and her family. The trial judge obviously treated this move as triggering a retrial of the original custody hearing—rather than a modification—at which both parents are presumed to be fit and where he can exercise his discretion without fear of reversal by selecting either parent as the custodial parent. He did so in this case without any

evidence that 1) the original custody granted to the mother had become unreasonable, 2) the loving mother had suddenly become unfit in some way, or 3) the best interests of the children had been jeopardized. The majority here agrees with the trial court. I disagree. I would reverse for the following reasons.

Andrea Mobley (now Smith) was initially awarded custody of the parties' minor children by the dissolution decree entered November 21, 1988. Thomas Mobley was granted reasonable visitation with the children. On January 3, 1989, Andrea filed a report with the court, pursuant to Ind.Code 31-1-11.5-21.1,[1] giving notice that she intended to move out of state and alleging that she had been transferred by her employer to South Carolina. At that time Andrea was living with her fiance, Charles Smith, who had also received a career advancement transfer to South Carolina. Ultimately, before the final hearing, she married Smith and they moved to Nashville, Tennessee, where her husband was transferred by his employer. Thomas filed a Petition to Modify Custody on January 20, 1989, objecting to Andrea's move and alleged, in general terms, the existence of ongoing and material changes in circumstance warranting a change in custody. The only change mentioned in his petition was that the move was not in the best interests of the children.

On February 28, 1989, at the preliminary hearing on Andrea's notice of intent to move out of state, the court granted temporary custody to Thomas. The judge's decision was based upon his perception that

---

1. IC 31-1-11.5-21.1 **Child custody; change of residence of custodial parent; notice of intent; hearing; modification of orders**

Sec. 21.1. (a) If an individual who has been awarded custody of a child under section 21 of this chapter intends to move to a residence (other than a residence specified in the custody order) that is outside Indiana or one hundred (100) miles or more from the individual's county of residence, that individual must file a notice of that intent with the clerk of the court that issued the custody order and send a copy of the notice to the parent who was not awarded custody and who has been granted visitation rights under section 24 of this chapter.

(b) Upon request of either party, the court shall set the matter down for a hearing for the purposes of reviewing and modifying *if appropriate* the custody, visitation, and support orders. The court shall take into account the distance involved in the proposed change of residence and the hardship and expense involved for noncustodial parents to exercise such rights, in determining whether to modify the custody, visitation, and support orders.

(c) Except in cases of extreme hardship, the court shall not award attorney's fees. (Emphasis added).

Andrea's recent moves indicated instability. The judge also commented upon the fact that Andrea was not yet married to her fiance. However, the judge stated that he had heard nothing to indicate that Andrea was unfit and advised Thomas to prepare the children to join Andrea once she reported to the court that she had settled and married. The judge also mentioned that this plan would give Courtney the opportunity to finish the school year.

On September 20, 1989, the court held a hearing on Andrea's Petition to Reconsider and Thomas's Petition to Modify Custody. The court awarded custody to Thomas. The evidence indicated that both parties were equally fit parents and that both wanted custody.[2] Andrea had married, quit her job and planned to stay home with the children. Thomas had made arrangements for the children to be cared for by his disabled father during his working hours. Thomas's mother also worked, but was available to help with the children in the evening.

At the outset, I want to make perfectly clear that, if this were an initial custody determination, I would have no problem with the trial court's decision, because the evidence indicated that both parents loved and wanted the children and both were fit and proper parents. However, the trial court—and the majority of this court—incorrectly treated this custody determination as if it were an initial custody decision and not a modification.[3] In an initial custo-

dy determination, the court presumes the parties are equally entitled to custody. In a modification hearing, however, the petitioning party bears the burden of overcoming the custodial parent's right to continued custody. *Walker v. Chatfield* (1990), Ind.App., 553 N.E.2d 490, 492.

Whenever the custodial parent, as here, intends to move outside of Indiana or 100 miles or more from the individual's residence, that party must file a notice of intent to move with the court that issued the custody order and send a copy to the noncustodial parent with visitation rights. IC 31-1-11.5-21.1. The statute further provides:

> Upon request of either party, the court shall set the matter down for a hearing for the purposes of reviewing and modifying *if appropriate* the custody, visitation, and support orders. The court shall take into account the distance involved in the proposed change of residence and the hardship and expense involved for noncustodial parents to exercise such rights, in determining whether to modify the custody, visitation, and support orders. IC 31-1-11.5-21.1(b). (Emphasis added).

This section must be construed in conjunction with IC 31-1-11.5-22(d),[4] which requires a showing of a change in circumstances "so substantial and continuing as to make the existing custody order unreasonable" before custody may be modified. *Ohman v. Ohman*[5] (1990), Ind.App., 557

---

**2.** The investigative report from the welfare department in Nashville, Tennessee, concluded that Andrea was a fit parent with a suitable home for the care of her two children.

**3.** The trial court acknowledged in his Findings of Facts that he considered IC 31-1-11.5-21(a)(1) through (6) (Record 71). He made no mention of IC 31-1-11.5-22(d). IC 31-1-11.5-21(a) permits the court to determine the best interests of the child with no presumption favoring either parent. IC 31-1-11.5-22(d) requires a presumption favoring the custodial parent. See footnote 4, *infra.*

**4.** (d) The court in determining said child custody, shall make a modification thereof *only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable.* In making its determi-

nation, the court shall not hear evidence on matters occurring prior to the last custody proceeding between the parties unless such matters relate to a change of circumstances.

**5.** In *Ohman,* a case similar to the present one, our second district reversed a trial court's decision to modify custody from the father to the mother, finding the court abused its discretion. The father was found in contempt of court when he moved from Indiana to Virginia to accept a new job and failed to file a notice of intent to move with the court, as required by statute. (In the present case, Andrea notified the court of her intent to move.) The court found that the evidence was insufficient to support a change of custody where the father's move was for economic reasons and there was no evidence the child had not adjusted or that the move was detrimental to the child.

N.E.2d 694; *Pea v. Pea* (1986), Ind.App., 498 N.E.2d 110, 114.

There is nothing in this record indicating that there has been any change so substantial as to make the original custody order "unreasonable." The only change is that Andrea moved out of state because she and her fiance, whom she subsequently married, were offered advancements in employment. Transfer of custody based on the fact that the custodial parent is living with someone to whom she is engaged, but not married, is improper, absent a showing the living arrangement is detrimental to the welfare of the children. *Dunlap v. Dunlap* (1985), Ind.App., 475 N.E.2d 723. (Staton, P.J., concurring in result; Garrard, J., concurring with opinion). Remarriage by the custodial parent is not sufficient to warrant a change of custody. *Larkin v. Larkin* (1975), 164 Ind.App. 46, 326 N.E.2d 618. Our courts have held that a custodial parent's move out of state is not, in itself, sufficient to constitute a substantial change of circumstances. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 890. *Ohman, supra*, at 697; *Garlinger v. Garlinger* (1986), Ind.App., 501 N.E.2d 1138, 1139; *Pea, supra*, 498 N.E.2d at 114. The fact that the move makes visitation inconvenient is not sufficient to warrant a change in custody. *Ohman, supra*, at 697; *Lubeznik v. Liddy* (1985), Ind.App., 477 N.E.2d 947, 952. Furthermore, in *Sebastian v. Sebastian* (1988), Ind.App., 524 N.E.2d 29, 33, this court observed:

> "the denial of custody solely on the ground of residence is also improper where the move is being made in good faith and out of a desire to improve the material or psychological life of the custodian, so long as the child's interests are not prejudiced thereby. *H. Clark, The Law of Domestic Relations In the United States* § 20.4. at 515–16 (2d ed. 1987)."

As noted earlier, Andrea moved out of state because she and her husband were offered advancements in employment. There was no evidence that Andrea's motive was to deny her former husband visitation or that she did not consider her children's welfare. There was no finding, nor any evidence that Andrea was unfit. There was no evidence that the children would not have adjusted to their new home or that the move would have been detrimental to the children's welfare. As this court observed in *Walker v. Chatfield, supra:*

> We recognize that there will always be changes in circumstances between the initial hearing and subsequent hearings—the child matures, parents may remarry, divorce, move, have more or less income than at the initial hearing, there may be other children added to the family through birth or remarriage that change the relationship of the child to the custodial parent, and so forth.

> But what life is all about *is* growth and change. However, these changes, which we take for granted, do not automatically trigger the right of a court to re-examine whether or not one parent might be preferred as a custodian over another, as is the test at an initial hearing. Thus, mere changes that occur as life goes on do not, standing alone, justify a modification of custody. What we look for when we review the trial court's action is evidence of a decisive and substantial change in circumstances which either establishes the unfitness of the custodial parent or affects the welfare of the child so that it renders the original custodial order unreasonable.

553 N.E.2d at 492.

The effect of the majority's affirmance of the trial court's decision here is to punish custodial parents who choose to move a long distance—within or without the state—from their home. When the majority asserts that "only Andrea has moved, and any hardship on Thomas is solely of her making," (slip opinion p. 4), the court implies that Andrea is somehow blameworthy for choosing to move and follow her new husband.

My first observation is that, although the hardship and expense for Thomas to exercise his visitation rights may be relevant to a modification of visiting arrangements, it is not relevant to changing custody where only the hardship on the children is rele-

vant. There was no evidence in this case of any hardship on the children. Moreover, I can not agree that the hardship to Thomas is solely because of Andrea's move. This particular hardship, if any, is one of a number of hardships resulting when two people marry, take on the responsibility of raising children, then divorce. The marital breakdown, for which Thomas must bear some responsibility, causes many kinds of hardship which will likely occur throughout the minority of the children. I believe it is inappropriate to consider the natural desire of a custodial parent to improve her (or his) life—and thereby the welfare of the children—as a matter which should subject the custodial parent to blame or punishment absent a showing of a detrimental effect on the children.[6]

In other words, the majority's opinion declares that, in the State of Indiana, a custodial parent who chooses to move and improve her life and that of her children forfeits the right to retain custody of the children because the move alone transforms a modification hearing into an original hearing at which the trial judge may, at his discretion, pick between two equally fit parents without the possibility of reversal by this court for an abuse of discretion.[7] However, custody of children may not be used as a means to punish the actions of parents. *Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807. The statute (IC 31–1–11.5–21.1) which permits the trial court to modify custody and visitation arrangements was not enacted to punish parents who move, but to provide a means for modifying visitation and support orders which would be made unreasonable because of a long distance move by the custodial parent. Visitation arrangements and support would necessarily need to be changed; however, the custody of the children would not be changed absent other significant changes of a decisive nature.

Here, the only changes brought about by this move are the change in school required for seven year old Courtney, and the difficulties and costs incurred in visitation because the parties now live so far apart. Both of these changes are inherent in the move itself and are not additional significant factors so decisive as to make the original custody order unreasonable. Stated another way, since the changes are inherent in the move, the majority is overruling *Poret v. Martin,*[8] *supra,* and other authority holding that a move is not, in and of itself, sufficient to warrant a change in custody.

**6.** If Thomas had initially been awarded custody of the children and decided to accept a better job opportunity far from Kendallville while Andrea remained in town, I would not penalize him for his decision and deprive him of the children.

**7.** Treating a modification hearing as an original hearing occurred in *Griffith v. Webb* (1984), Ind.App., 464 N.E.2d 384. The writer of this dissent criticized that opinion in *Walker v. Chatfield, supra,* at 494–495. In *Griffith,* a paternity case, the trial court changed custody of a child from her mother—with whom she had lived for 7 years—to her father. On appeal this court affirmed the trial court's decision finding no abuse of discretion. The court found that the evidence in that case was a "close call" for the trial court because both parties wanted the child and she was well-adjusted to both families. There was some indication the mother was in poor health (but the court did not specify what that meant) and that she had an unstable employment record, whereas the father had a stable employment record. The mother lived in her mother's home—the father had married and

had a small home of his own. This court in *Griffith,* like the majority in the present case, treated the matter as if it were an initial hearing and not a modification. As we stated in *Walker,* " 'close calls' occur at initial custody hearings, not at modification hearings." 553 N.E.2d at 495. There was no weight given in *Griffith,* nor is there in the present case, to the policy that permanence and stability in the custodial relationship is the paramount consideration when determining whether a change in custody is in a child's best interests.

**8.** In *Poret,* our supreme court held that a move out of state is not *per se* a substantial change in circumstances such as to warrant a change in custody. However, the court found other factors combined with the mother's move to Arizona from Indiana to be a substantial change making the original custody order unreasonable. These factors included the advanced ages of the two boys, ages 10 and 11, the mother's lifestyle indicated some lack of concern for her children's welfare, and an earlier custody order had required that the children were not to be permanently moved from Indiana.

The majority concludes "that the trial court could reasonably have found that it was in the best interests of the minor children to reside with their father because 'remaining in Indiana would promote stability in [their] schooling, community, social, church, and familial relationships'." [9] (majority opinion pp. 506–507, quoting *Burrington v. Howard* (1988), 521 N.E.2d 371, 373.) Again, the court is overruling *Poret*—changes in these relationships are inherently part of moving. The majority also concluded, among other things, "[t]he move to Nashville could very well beget a consequential end result to any of these *crucial* relationships, making the change in circumstances substantial and warranting a modification." (majority opinion p. 507.) (emphasis added). Implicitly, the majority acknowledges that there was no showing of a changed circumstance warranting modification—merely the *potential* "for a consequential end result." A *potential* consequential end result is not evidence of such a decisive nature sufficient to warrant a modification of custody.

Moreover, it is not clear to me what the majority means by "beget a consequential end result" to these "crucial" relationships. I presume the court means that the move to Nashville could end these relationships. Obviously, it will end the relationship with Courtney's school [10], neighborhood playmates, and with the local church. [11] Thomas presented no evidence that a new school, another church, and new playmates in Nashville would be somehow detrimental to the children's welfare in any way. I also find disturbing, the majority's reference to school, church and community relationships as "crucial" relationships. "Crucial" means of immense and decisive importance

—essential. Is attending the same school or church throughout childhood crucial? Of course not. Is remaining in one community throughout childhood crucial? Obviously not.

The majority's concern for crucial "familial relationships" is disturbing because the trial court—and the majority here—express concern about the children's relationships to other relatives [12]—two sets of grandparents, uncles, aunts and cousins in the Kendallville area—while ignoring the truly "crucial" relationship of two small children to their mother, who had been determined to be a fit and proper custodian, both at the initial hearing and this modification hearing. Our courts have sought to maintain stability and permanence between one custodial parent and children—not permanence in schooling, community, social, church and other familial relationships—because the stability and permanence in the custodial relationship is considered to be necessary for the growth and welfare of children. See *Wible v. Wible* (1964) 245 Ind. 235, 196 N.E.2d 571; *Walker v. Chatfield, supra*. It is stability and permanence in this relationship which is the basis of our statutory requirement that custody of children should be modified only upon a showing of a changed circumstance so substantial as to make the original custody order unreasonable. IC 31–1–11.5–22(d); *Smith v. Dawson* (1982), Ind.App., 431 N.E.2d 850, 852.

Furthermore, I question the majority's implication that the children's relationship to a particular church in a particular community is crucial, or that it is even a proper factor for the court to take into consideration. By statute and case law, a custodial

9. *Burrington* involved a *joint custody* arrangement which was made impossible by the mother's move to Georgia; hence, *Burrington* is not controlling on the determination of a modification where one party was originally granted sole custody.

10. Zachary is preschool age.

11. We note neither parent took the children to church regularly prior to the divorce. Thus, the choice of church is not really an issue in this case.

12. These other relatives do not have the legal responsibility for raising these small children. Also, as in *Sebastian, supra,* we are sympathetic to Andrea's desire to leave a small town environment where she would constantly be reminded of a failed marriage and where there would be less opportunity for employment or advancement which would benefit the children, as well as Andrea.

parent has the right to determine a child's upbringing, including education, health care, and religious training. IC 31–1–11.5– 21(b); *Dunlap v. Dunlap, supra,* at 726. The majority, by referring to the church as a crucial issue, is challenging the constitutional mandate that the State must not interfere with religious freedom or take steps to prefer one religion over another. U.S. Const. amend. I; See, generally, *Child Custody and Visitation—Religion,* 22 A.L.R.4th 971 (1983) and *Note, The Establishment Clause and Religion in Child Custody Disputes,* 82 Mich.L.Rev. 1072 (1984) and cases cited therein. A parent's choice of church or religion, unless the parent's religious practices endanger the children's physical health, significantly impairs their emotional development or the children are mature enough to have a preference, is an improper factor in custody modifications. IC 31–1–11.5–21(b); *Fisher v. Fisher* (1982), 118 Mich.App. 227, 324 N.W.2d 582.

In *Dunlap, supra,* the trial court changed custody from the father to the mother based on a showing that the father was 1) living with a woman out of wedlock and 2) the father did not take the six year old daughter to church. Judge Hoffman, speaking for the court, held that the evidence was clear that the extramarital living arrangement by the husband and his fiance had no detrimental effect on the child and, without such evidence, modification of custody based solely on that relationship was improper. Judge Hoffman then stated:

In her argument, Leeanne additionally notes that Tobie does not attend church when residing with her father. It is clear, however, that Indiana specifically leaves the choice of religious training to the custodial parent. IND.CODE § 31–1–11.5–21(b). Although David and Tobie presently do not attend church, there has been no suggestion that he would prohibit Tobie from doing so. Leeanne specifically admits that David has had no objections to Tobie's baptism nor to her attending church.

The facts and issues present in support of Leeanne's petition to modify custody do not show that the present custody arrangement is unreasonable nor that there are changed circumstances so substantial and continuing as to warrant a modification of the original custody order.

475 N.E.2d at 726.

Judge Garrard in his concurring opinion stated:

When parties litigate a matter in our courts they and we are constrained to the evidence admitted. On appeal it is that evidence to which we must apply the law. Where that party bearing the burden of proof fails to sustain his or her contention, either because there was no evidence available on a critical issue, or because the evidence failed to sustain that party's contention, there is a failure of proof.

Upon the evidence presented in the case at bar, I am constrained to agree with the majority that no change in circumstances so substantial and continuing as to make the existing order unreasonable was established.

I therefore agree the judgment must be reversed.

*Id.*

Judge Garrard's comments are equally applicable in this case.

In summation, the ultimate finding of the majority in this case is incorrect as evidenced by its conclusion that

"the evidence and the inferences from the evidence support the findings of the trial court; that a continuing and substantial change in circumstances had taken place, and 2) that the best interest of the children required a change in custody to Thomas." (majority opinion p. 507.)

This finding by our court is deficient because it does not recognize, as required by statute and case law, that a change in circumstances is not enough unless it is of such a decisive nature that it makes the original custody order unreasonable. In fact, there was no such evidence in this case. Thomas failed to sustain his burden of proof as to the unreasonableness of the original custody order. He failed to show that Andrea was an unfit mother. He

failed to establish that her move to Nashville had any adverse or detrimental effect on the children. He failed to establish that Andrea was anything other than a loving, caring mother. I would reverse and remand for the purpose of ordering reasonable visitation rights to the father and for an appropriate support order.

I concur with Judge STATON's resolution of the support issue in part II.