

FILED

Sep 21 2018, 5:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Young
Young and Young
Franklin, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tamara Jean (Swindle) Copple,<br>*Appellant-Defendant,*<br><br>v.<br><br>Huel Dwayne Swindle,<br>*Appellee-Plaintiff* | September 21, 2018<br><br>Court of Appeals Case No.<br>41A01-1710-DR-2471<br><br>Appeal from the Johnson Superior<br>Court<br><br>The Honorable Eugene Stewart,<br>Senior Judge<br><br>Trial Court Cause No.<br>41D02-0607-DR-271 |

**May, Judge.**

[1]     Tamara Jean (Swindle) Copple ("Mother") appeals the trial court's modification of the settlement agreement between her and her ex-husband, Huel Dwayne Swindle ("Father"). Mother argues the trial court lacked the authority to modify the terms of the settlement agreement. We reverse and remand.

# Facts and Procedural History

[2] When Mother and Father divorced on September 5, 2008, Mother was granted custody of the two minor children born of their marriage. The decree of dissolution incorporated a settlement agreement in which the parties agreed:

> 7. That the husband shall be solely responsible for the payments on the parties marital residence including taxes and insurance until such time as the house is paid off. This payment, coupled with the obligation on the 2006 Impala shall be in lieu of child support and be part of the distribution of property. That this arrangement has been in effect for the past two years and has worked and these payments shall constitute and Domestic [Support Order for] purposes of the federal bankruptcy Act.

(App. Vol. 2 at 12) (errors in original).[1]

[3] In early 2017, the younger child, then 22 years old, married, and Father stopped making the payments on the marital residence. On March 2, 2017, Mother filed a "Motion for Rule to Show Cause" alleging Father had failed to make the February mortgage payment. (*Id*. at 14.) The trial court scheduled the matter for hearing. On March 16, 2017, Father filed a petition for modification alleging the marital residence payments constituted child support and the minor children were both "emancipated as a matter of law." (*Id*. at 17.) Father argued his obligation should therefore be terminated.

---

[1] The trial court included this same paragraph as a finding, which is where we found the "Support Order for" language that we included here. (See App. Vol. 2 at 11.)

On June 5, 2017, the trial court held a hearing. On October 5, 2017, the trial court issued its order, noting the property settlement agreement did not "establish a child support amount[.]" (*Id*. at 9.) The trial court found this failure made the agreement ambiguous, and then the court found unenforceable the clause ordering Father to make the payments "until such time as the house is paid off." (*Id*.) Therefore, the trial court terminated Father's obligation to make such payments as of the date of Father's petition for modification.

# Discussion and Decision[2]

## *Modification of Settlement Agreement*

Mother appeals the trial court's modification of Father's monthly payment.[3] Typically, we review trial court decisions about child support modification for clear error. *See Bogner v. Bogner*, 29 N.E.3d 733, 738 n.2 (Ind. 2015) (clarifying

---

[2] Father did not file a brief. When an appellee does not submit a brief, we do not undertake the burden of developing arguments for that party. *Thurman v. Thurman*, 777 N.E.2d 41, 42 (Ind. Ct. App. 2002). Instead we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error. *Id*. Prima facie error is "error at first sight, on first appearance, or on the face of it." *Van Wieren v. Van Wieren*, 858 N.E.2d 216, 221 (Ind. Ct. App. 2006).

[3] Mother argues alternative theories as to how the trial court erred when it modified the property settlement agreement. Mother asserts either: 1) the order to pay the mortgage was not child support but rather an agreement as to property distribution and therefore not subject to modification without agreement of the parties or a showing of fraud, duress, or undue influence; 2) if the order to pay the mortgage was child support, the trial court was not required to conclude those payments stopped due to the emancipation of the children—just because the trial court would not have ordered such payments, the parties were free to make such an agreement; or 3) if the payments are not part of the property division or child support, they must be classified as disability maintenance and therefore, because Mother is still disabled, the trial court erred in modifying the agreement. Overall, however, Mother maintains the language as to the duration of the payments, regardless of the category in which the payments belong, is unequivocally "until said time as the house is paid off." (App. Vol. 2 at 12.)

the proper standard on review for support modifications is clear error). When the trial court *sua sponte* makes findings of fact and conclusions of law, we must determine whether the evidence supports the findings and whether the findings support the judgement. *Speaker v. Speaker*, 759 N.E.2d 1174, 1179 (Ind. Ct. App. 2001). The judgment will be reversed only when clearly erroneous. *Id.* A finding is clearly erroneous only if the record contains no facts to support it either directly or by inference, and a judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). However, in this case the court's decision was controlled by its interpretation of the settlement agreement reached by the parties.

[6] We interpret settlement agreements under a *de novo* standard. *Shorter v. Shorter*, 851 N.E.2d 378, 383 (Ind. Ct. App. 2006). Settlement agreements are contractual in nature and binding on the parties once "the dissolution court merges and incorporates that agreement into the divorce decree." *Id.* Therefore, the rules governing contracts are applicable when we interpret the terms of the agreement. *Id.* If the terms are clear and unambiguous, those terms "are deemed conclusive." *Id.*

[7] Here, the settlement agreement, which was incorporated into the divorce decree, states Father was "solely responsible for the payments on the parties [sic] marital residence including taxes and insurance until such time as the house is paid off." (App. Vol. 2 at 12.) The trial court's order misstated the decree when it found the decree made "no indication as to [Father's] child

support obligation, only that his paying the debt on the marital residence and the 2006 Chevy Impala 'shall be in lieu of child support.'" (*Id*. at 9.) The decree actually indicated the residence payments and the payments on the vehicle were to "be in lieu of child support and be *part of the distribution of property*."[4] (*Id*. at 12) (emphasis added). Therefore, the trial court's finding that the debt obligation equated to child support was in error. That debt obligation was both child support and property distribution.[5]

---

[4] We note the order also indicated "these payments shall constitute [a] Domestic [ Support Order for] purposes of the federal bankruptcy Act." (App. Vol. 2 at 12.) Federal law provides:

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title . . ., that is--
>
> (A) owed to or recoverable by--
>
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; . . .
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
>
> (i) a separation agreement, divorce decree, or property settlement agreement;
>
> (ii) an order of a court of record; or
>
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C.A. § 101. Further, domestic support orders are excepted from discharge under Section 523(a)(5) of the Bankruptcy Code. However, none of these facts clarify the classification of *this* award as child support, property distribution, or spousal maintenance.

[5] While we are too far downstream from this order to undo what has been done, we note that trial courts ought not enter orders that conflate child support and property distribution because it creates confusion of exactly the type with which we are dealing herein. *See Jenkins v. Jenkins*, 567 N.E.2d 136, 140 (Ind. Ct. App.

[8] Indiana courts have encouraged divorcing couples to resolve their disputes in their own fashion by entering into settlement agreements. *Dewbrew v. Dewbrew*, 849 N.E.2d 636, 642 (Ind. Ct. App. 2006). As to property division, those agreements are not subject to court modification unless the agreement allows for modification, the parties agree to modification, or a court finds the agreement was procured using fraud, duress, or undue influence. *See* Ind. Code § 31-15-2-17 (parties may agree to property settlement but once that agreement is "incorporated and merged into the decree[, it] is not subject to subsequent modification by the court, except as the agreement prescribes or the parties subsequently consent"); *see also Dillard v. Dillard*, 889 N.E.2d 28, 33 (Ind. Ct. App. 2008) (an incorporated property settlement agreement may not be modified by the court unless the party requesting modification proves fraud, duress, or undue influence). However, the principles of freedom of contract that govern property settlements do not apply to child support and child custody because of the "overriding policy concern [to] protect[] the welfare and interests of children." *Voigt v. Voigt*, 670 N.E.2d 1271, 1278 n.10 (Ind. 1996).

[9] Thus, while Father's obligation to pay child support is modifiable by statute, any payment pursuant to property distribution is not. *See Kraft*, 868 N.E.2d at 1188 (child support agreed to in a settlement agreement is modifiable by statute); *see also* I.C. § 31-15-2-17 (property divisions pursuant to a settlement

1991) (conflating child support with other marital debits is confusing and "[h]olding child support distinct from other accounts protects the child's right to receive support").

agreement are only modifiable in certain circumstances). Therefore, in order to decide whether the trial court erred when it modified the payment terms, we must decide whether the payments constitute child support or property distribution.

[10] Because the decree conflated the payment of the mortgage as child support and as a property division, the categorization of the payment is ambiguous. When determining the correct interpretation of an ambiguous term in a settlement agreement, one of the factors we consider is whether the award was given as *quid pro quo*; if so, it is more likely property division than child support. *Thompson v. Thompson*, 550 N.E.2d 1332, 1337 (Ind. Ct. App. 1990). Other factors include the title of the property in question and the parties' intent when they made the agreement. *Id*.

[11] In *Thompson*, the trial court's decree incorporated a settlement agreement wherein the control of the marital residence was given to the father because he had custody of the children. *Id*. at 1334. The decree specifically stated both parties would legally remain joint tenants with rights of survivorship. *Id*. In a later order, after custody had changed to the mother, the control and use of the marital residence was given to mother until "July 15 of the year in which the youngest child graduates from high school[.]" *Id*. at 1335. Once the youngest child graduated, the parties were ordered to sell the real estate and split the proceeds equally. *Id*.

[12] We held the decree's order regarding control of the marital residence represented child support with a later property division. *Id.* at 1337. The control of the residence was not, in itself, a division of property. *Id.* We also held that, although the decree was ambiguous because it could be interpreted multiple ways, the trial court's interpretation was supported by "several factors." *Id.* Namely, the title to the property was to remain in both parents' "names as joint tenants with rights of survivorship." *Id.* Additionally, "there was no *quid pro quo* exchanged for the award or control[.]" *Id.* Due to the ambiguity, we held the trial court had rightfully considered extrinsic evidence to determine the parties' intent when they made the original agreement. *Id.* In the original agreement, the mother had not received anything in return for ceding control of the marital residence to father and stated she had made the agreement because she had not wanted to disrupt the children's environment. *Id.* Therefore, the trial court's interpretation regarding control over the marital residence was not in error as such control was child support and modifiable. *Id.*

[13] In *Voigt*, our Indiana Supreme Court reviewed a modification of a settlement agreement. While recognizing a trial court is constrained on the awards it can order, the Court noted parties are not so limited. *Voigt*, 670 N.E.2d at 1277. The Court said a trial judge may never know the reasons behind the agreement. *Id.* at 1278. Such ignorance, though, does not mean the agreement is without consideration or that it was procured through falsity. *Id.* Therefore, our Indiana Supreme Court "think[s] it best that courts tread lightly when evaluating settlement agreements." *Id.*

[14] Although the nature of the payments Father was to make herein – child support or property distribution – is ambiguous, the duration of the payment was unequivocal. Father agreed to make the payments on the marital residence "until such time as the house is paid off." (App. Vol. 2 at 12.) The decree was entered on September 5, 2008. At that time, the children were 18 and 14 years old. The mortgage payoff on the house, at the time of the dissolution, was $146,000. (Tr. at 34.) As of March 16, 2017, the maturity date of the mortgage was July 1, 2036. (*See* Ex. Vol. Petitioner's Ex. 1 at 3) (mortgage statement listing monthly payment amount and maturity date of loan).

[15] Father testified he agreed to make the marital residence payments because he "didn't want [his] children having to pick up and be moved somewhere else." (Tr. at 7.) He stated he only made the agreement because he thought the decree "could be modified later on." (*Id*. at 9.) However, nothing in the agreement lends itself to this interpretation. Mother was given the marital residence. Father was ordered to quitclaim his interest in that property to Mother. Father was ordered to make the payments on the marital residence and on the 2006 Impala. Nowhere in the agreement is modification mentioned. Under no reasonable scenario, with regular monthly payments, would the marital residence have been paid off before the children were emancipated. Therefore, it is only reasonable to infer Father had an alternative motivation to agree to pay off the mortgage. It is unnecessary for us to know why he made the agreement. *See Voigt*, 670 N.E.2d at 1278 (our ignorance about why an

agreement was entered does not mean the agreement was without consideration).

[16] We decline to disrupt the agreement made by the parties and ratified by the trial court that granted the divorce. The amount to be paid by Father for the marital residence was ascertainable at the time the agreement was made in 2008, *i.e.*, the full amount of the mortgage loan. An ascertainable amount is properly treated as property to be divided. *Sedwick v. Sedwick*, 446 N.E.2d 8, 10 (Ind. Ct. App. 1983). Therefore, payments Father was ordered to make on the marital residence are an agreement on property division and not child support and, thus, not modifiable without a showing of fraud, duress, or undue influence. *Compare Dillard*, 889 N.E.2d at 33 (an incorporated property settlement agreement may not be modified by the court unless the party requesting modification proves fraud, duress, or undue influence), *and* I.C. § 31-15-2-17 (property divisions pursuant to a settlement agreement are only modifiable in certain circumstances), *with Kraft*, 868 N.E.2d at 1188 (child support agreed to in a settlement agreement is modifiable by statute). Father did not allege, and no evidence was produced to prove, Mother had fraudulently procured the agreement, placed Father under duress, or used undue influence. Consequently, the trial court erred when it modified the decree and terminated Father's obligation to pay the marital residence debt.

### *Contempt*

[17] Mother also requests we reverse the trial court's failure to find Father in contempt. Whether a party is in contempt of court is a matter within the trial

court's discretion, and its decision will be reversed only for an abuse of that discretion. *Norris v. Pethe,* 833 N.E.2d 1024, 1029 (Ind. Ct. App. 2005). A court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Mitchell v. Mitchell,* 871 N.E.2d 390, 394 (Ind. Ct. App. 2007). When reviewing a contempt determination, we will not reweigh evidence or judge witness credibility. *Id.* We will affirm unless, after a review of the entire record, we have a firm and definite belief the trial court made a mistake. *Id.*

[18] Mother alleged Father was in contempt for failing to make payments on the marital residence as ordered in the dissolution decree. Father admitted he quit making the payments. Indiana Code section 31-15-7-10 provides, in relevant part, "Notwithstanding any other law, all orders and awards contained in a dissolution of marriage decree . . . may be enforced by [] contempt[.]" As Father failed to follow the order in the decree to make payments on the marital residence, the trial court had the authority to find Father in contempt. *See Mitchell*, 871 N.E.2d at 396 (finding of contempt is proper when a party fails to comply with the dissolution decree). Because we reverse herein the trial court's determination that those payments were child support and subject to modification, we invite the trial court to reconsider on remand its determination that Father was not in contempt by failing to make the payments required by his property settlement agreement.

### *Appellate Attorney Fees*

[19]   Mother requests we award appellate attorney fees.  She argues we should award appellate attorney fees because of the disparity between her income and Father's income and because of Father's contempt.

[20]   Indiana Appellate Rule 66(E) allows us to "assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith."  Such an award may include appellate attorney fees but is left to our discretion.  *Id*.  However, we "use extreme restraint when exercising" that power due to "the potential chilling effect upon the exercise of the right to appeal."  *Trost-Steffen v. Steffen*, 772 N.E.2d 500, 514 (Ind. Ct. App. 2002), *reh'g denied, trans. denied.*  As Father took no action before us, we cannot hold he acted in such a manner as to justify payment of Mother's attorney fees under Appellate Rule 66.

[21]   However, Indiana Code section 31-15-10-1(a) authorizes a trial court to award reasonable appellate attorney fees.  *See also Townsend v. Townsend*, 20 N.E.3d 877, 881 (Ind. Ct. App. 2014) (section 31-15-10-1(a) allows a trial court to award appellate attorney fees in dissolution proceedings), *trans. denied*.  Jurisdiction over this award rests with the trial court.  *Goodman v. Goodman*, 754 N.E.2d 595, 603 (Ind. Ct. App. 2001), *reh'g denied*.  Therefore, we remand the matter of appellate attorney fees to the trial court.

# Conclusion

The trial court erred when it modified the settlement agreement because the record suggests the mortgage payment was more akin to property distribution and, thus, could not be modified without agreement of the parties or proof of fraud in the making of the agreement. We reverse and remand for the trial court to revise its order in accordance with this opinion, to reconsider Mother's motion for rule to show cause in light of our holding as to the settlement agreement, and to determine whether an award for appellate attorney fees is proper.

Reversed and remanded.

Riley, J., and Mathias, J., concur.