

**FILED**

Oct 28 2019, 8:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Tula Kavadias
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Andrew P. Martin
Saint John, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kriston M. Scott,

*Appellant-Defendant,*

v.

Gerald J. Corcoran, III,

*Appellee-Plaintiff.*

October 28, 2019

Court of Appeals Case No.
19A-DR-444

Appeal from the Lake Circuit
Court

The Honorable Marissa
McDermott, Judge

The Honorable Lisa A. Berdine,
Magistrate

Trial Court Cause No.
45C01-1009-DR-856

**Tavitas, Judge.**

# Case Summary

Kriston M. Scott ("Mother") appeals from the trial court's order denying her petition for rule to show cause regarding Gerald J. Corcoran, III's ("Father") failure to pay child support; and denying her request for attorney's fees.[1] We affirm in part, reverse in part, and remand.

# Issues

Mother raises three issues on appeal, which we revise and restate as follows:

    I.      Whether the trial court abused its discretion in denying Mother's request for further extension of time to submit proposed findings of fact and conclusions of law.

    II.    Whether the trial court clearly erred in denying Mother's petition for rule to show cause regarding Father's failure to timely pay child support.

    III.    Whether the trial court clearly erred in finding that Father overpaid child support to Mother and in entering a money judgment against Mother and in favor of Father.

    IV.    Whether the trial court clearly erred in failing to order Father to pay Mother's attorney's fees incurred for defending against Father's petition for an accounting, which petition Father withdrew at the close of the four-day evidentiary hearing.

---

[1] The trial court denied Mother's petition to modify child support; however, Mother does not challenge this finding on appeal.

# Facts

Mother and Father married in 2002 and have two children. During the marriage, Mother worked primarily as a homemaker, and Father was employed as an operations manager for Scrap Metal Services ("SMS"). In 2013, Father's annual base salary from SMS was approximately $150,000.00. Father is a minority shareholder in SMS,[2] in which he once owned a 20.65 percent interest. Father is also a shareholder in SMS Realty and other SMS entities (collectively, "the subsidiary companies"). In addition to his salary, Father receives distributions from SMS and the subsidiary companies in profitable years.

Father filed to dissolve the marriage and, on November 26, 2013, the trial court approved an agreed decree of dissolution ("Agreed Decree") that incorporated the parties' negotiated settlement agreement and settled outstanding issues of property division, custody, parenting time, and child support. The relevant portion of the Agreed Decree for purposes of this appeal is as follows:

> 5. CHILD SUPPORT
>
> Commencing December 1, 2013, the Father shall pay Two Hundred and Thirty Five Dollars ($235.00) per week in Guideline Child Support and, consistent with the Guideline treatment for irregular income, shall pay 12% of all income earned by the husband in excess of $2,903.79 per week as set forth in the attached Child Support Worksheet. The 12% of

---

[2] In 2013, Father's ownership interest was 20.625 percent; however, in mid-2015, his interest was diluted to 15.625 percent when Father failed to meet an owners' capital call.

irregular income based Child Support shall include income received in the last quarter of 2013. Thereafter, the Husband shall file his Federal tax returns no later than November 1st of each year and shall immediately notify the Mother of his filing. The parties shall have 30 days to calculate the 12% of irregular income and to calculate the support owed thereon consistent with the Indiana Child Support Guidelines, and taking into consideration support paid by Father to Mother for the year 2013. The Father shall have 30 days thereafter to pay all amounts owed for said irregular income. Any amount not paid within the 30 days shall become a judgment against the Father. .
. . .

The parties agree that in order to determine Father's excess income that the following information shall be considered:

In addition to wages and rental income in the form of Distributions from SMS Burnham, LLC, Father receives other income Distributions from various entities in which he has an interest, including but not limited to Scrap Metal Services, LLC. The parties further agree that Father may at time receive "disbursed income" (distributions received) and "undisbursed income" (pass through income) from these entities. Consistent with the holdings in *Tebbe v. Tebbe,* 815 N.E.2d 180, 182 (Ind. Ct. App. 2004), the parties agree that any undisbursed income of Father, i.e. pass through income, shall not be included in Father['s] gross income for making the calculation of child support, however, all disbursed income received and as demonstrated on Father's K-1's and his tax returns shall be included in Father's gross income for child support purposes.

The parties further agree that in order to properly calculate Father's support obligation, the income tax on the undisbursed portion of his income shall be calculated and then deducted from Father's income. All the remaining Distributions, excluding the

undisbursed as indicated and the tax on the undisbursed, shall then be used to calculate Father's gross income.

Finally, the parties agree that Father's tax rate may and likely will be in excess of the presumed tax rate set forth in the Indiana Child Support Guidelines as the rate exists in 2013, and as it may change in subsequent years. To that end, the parties agree to adjust the calculation of Father's child support by adjusting the calculation to reflect the actual tax rate that Father pays each year on the disbursed and regular income used for his support obligation calculation, but not the tax rate that Father pays on his undisbursed income.

Appellant's App. Vol. II pp. 48-50 (footnotes omitted). In the Agreed Decree, Father also agreed to execute an authorization to allow Mother to obtain his federal tax return "directly from the IRS annually" and to provide "his complete federal and all state income tax returns, his 1099s from all sources, including his INT, DIV and related forms, and his K-1's from all sources" to Mother. *Id.* In 2012 and 2013, Father paid $37,230 for irregular child support. Father did not pay irregular child support in 2014.

[5] In dividing the marital property in the Agreed Decree, the trial court, *inter alia*, assigned to Mother Father's interest income from a promissory note ("Note") for approximately $1.155 million between Father and SMS.[3] Mother was to receive monthly interest payments of approximately $9,000.00 on the Note and

---

[3] The Note was for $1.155 million that Father loaned to SMS Holdings at eight percent interest.

the principal when it was due. In 2015, SMS temporarily ceased making interest payments to Mother because of financial difficulties.[4] The Agreed Decree provided that "once [ ] interest income which Mother receives on the Promissory Note . . . terminates, [ ] Mother shall be entitled to a modification of support as that event will constitute . . . change[d] circumstances." *Id.* at 50. Father did not pay any irregular child support in 2015.

[6] On August 12, 2015, Mother filed a petition for modification of child support in which she alleged a continuous and substantial change in circumstances warranting modification of the child support order for various reasons, including the suspension of interest payments on the Note. Mother also filed a verified motion for rule to show cause regarding Father's failure to timely produce his 2013 and 2014 tax returns and Father's failure to pay Mother "any sum . . . arising from [ ] his excess income." *Id.* at 63. At the time, Father was paying his agreed-upon base support of $235.00 per week. Mother also sought attorney's fees.

[7] In April 2016, Father paid a lump-sum payment of $108,021.00 for irregular child support to Mother, based on calculations based on his original tax returns. On April 26, 2016, Father filed a petition to modify child support in which he asked the trial court to deviate from the recommended child support pursuant to

---

[4] Mother received all interest payments and the entire principal due on the Note in 2017.

the Indiana Child Support Guidelines; and Father requested that the trial court, "in determining a proper child support amount for the children[,] tak[e] into consideration that the support payments being made by [F]ather to [M]other [we]re in excess of a reasonable and necessary amount to provide for the care and expenses of the children." *Id.* at 71. Father also sought an accounting of Mother's use of all child support monies and attorney's fees.

[8] On February 12 and 13, July 30, and November 26, 2018, the trial court conducted a multi-day hearing on Mother's petition to modify child support and motion for rule to show cause, filed on August 12, 2015, and on Father's petitions to deviate from the Child Support Guidelines and for an accounting, filed on April 26, 2016. On the first day of the hearing, Mother testified, under questioning by her counsel, that Father failed to timely supply Mother with his tax returns as required in the Agreed Decree.

[9] Mother's expert, certified public accountant and certified valuation expert, Jill Jones testified that Mother hired her to aid in crafting the formula prescribed in the Agreed Decree for calculating Father's income for purposes of child support. Jones testified that Father's failure to timely produce his tax returns hampered her calculation efforts.[5] Jones further testified that Father suffered significant business losses of approximately $4.4 million in 2015, carried the

---

[5] It is unclear from the record precisely when Father supplied Mother with his tax returns. *See* Appellant's App. Vol. II p. 33 (trial court's finding that "[c]redible evidence is lacking as to the date Father provided his [ ] tax returns to Mother").

losses back on his already-filed tax returns, and amended his 2013 tax returns to carry back his losses. Jones testified that she needed the amended 2013 tax returns for purposes of calculating Father's income for child support but that, as of the first day of the hearing—February 12, 2018—Father still had not provided his amended tax returns to Mother.

[10] Father's expert, certified public accountant Gary Shutan, testified that his calculations of Father's income for child support purposes were based on Father's original tax returns and not on the amended returns. Shutan testified that the amended 2013 tax returns had no effect on the amount of child support Father was required to pay pursuant to the Agreed Decree.

[11] After the February 13, 2018, portion of the hearing, the trial court continued the hearing and ordered Father to:

> provide all amended returns. The signed copies. And all attachments that support those returns within fourteen days. The parties are then to have their respective accountants review those amended returns and recalculate [Father's child support obligation] pursuant to their formulas . . . . And those are to be submitted to the Court within sixty days.

Tr. Vol. III p. 104. Father, then, produced his amended tax returns.

[12] At the hearing on July 30, 2018, counsel for Mother moved to admit Father's 2015 tax return as well as his amended 2013 tax return into evidence. Jones testified that she had performed an updated computation of Father's child support obligation for 2013 to reflect the impact of Father's business losses

carried back on the child support calculation, pursuant to the Agreed Decree.[6] Jones testified that there was a "significant difference" in the accountants' final calculations of Father's income for purposes of child support for 2013. Tr. Vol. III p. 132. Jones testified, regarding the disparity between her calculations and Shutan's calculations, that Shutan used an effective rate of forty-three percent based on Father's original tax returns in applying the formula; whereas, Jones employed an effective rate of two-and-one-third percent based on Father's amended 2013 tax return.

[13] On cross examination of Jones, counsel for Father asked Jones, "[C]an you direct either myself [sic] or the Magistrate to anything in the [Agreed] Decree that gives you the authority to, to carry back those losses and re-calculate support for 2013?" Tr. Vol. III p. 157. Jones replied that the Agreed Decree was silent as to losses carried back but testified further that the Agreed Decree also does not preclude Mother from accounting for Father's business losses carried back in calculating his income for child support. Father then re-called Shutan, who testified that "[he] d[id]n't think the [Agreed] Decree allowed for interpretation on what to do with a carry back claim" and he "didn't see anything in the [Agreed] Decree that allowed us to make the assumption that [losses carried back] should be included in the computation." *Id.* at 169, 175.

---

[6] Jones testified further that "nothing changed" in her recalculations of income actually received by Father in 2014 and 2015; and that she and Shutan agreed as to the child support income calculation for 2016. Jones testified to a $37,000.00 difference between hers and Shutan's calculations in 2017 based upon the amended tax returns.

[14] At the close of the evidence, Father withdrew his petition for an accounting. The trial court—on Mother's motion—then ordered the parties to submit proposed findings of fact and conclusions of law ("proposed findings") by December 26, 2018. On December 13, 2018, counsel for Mother moved for an extension of time to file proposed findings and: (1) cited numerous successive work-related deadlines, upcoming and long-planned overseas travel, other professional obligations, and family reasons; (2) reported that counsel for Father had no objection; and (3) requested that the deadline for submission of proposed findings be extended to January 15, 2019. The trial court granted the extension of time. On January 15, 2019, counsel for Mother moved for an additional seven-day extension of time due to illness and dog bite injuries. Father submitted his proposed findings on January 15, 2019 and filed an objection to Mother's request for extension the next day. On January 17, 2017, the trial court denied Mother's requested extension without explanation.

[15] On January 29, 2019, the trial court entered its order on the parties' petitions taken under advisement. In its order, the trial court: (1) denied Mother's petition to modify child support; (2) granted Mother's petition for rule to show cause for Father's failure to timely submit his tax returns to Mother; (3) ordered withdrawn Father's petition for accounting; (4) denied Mother's petition for rule to show cause regarding alleged failure to pay child support and found that Father actually overpaid support by $23,483.23; (5) denied Father's petition for modification of child support; (6) denied each party's request for attorney's fees; (7) entered a $3,000.00 sanction against Father for his failure to timely produce

his tax returns and credited the $3,000.00 sanction toward Father's overpayment of child support; and (8) entered a money judgment of $20,483.33 against Mother.

[16] Additionally, regarding the calculation of Father's income for purposes of child support, the trial court rejected Mother's recalculation of Father's income for purposes of child support by using Father's amended returns that reflected his losses carried back; the court found that "re-do[ing] support calculations due to the loss carry-back" "constitutes a modification of the terms of the [Agreed Decree]." Appellant's App. Vol. II p. 35. The trial court also identified two errors in Mother's calculations—namely: (1) Mother's "failure to multiply the excess income amount by 12% to determine the support amount"; and (2) Mother's inclusion of an "unsubstantiated provisional arrearage [of $121,257.50] not mentioned in the [Agreed] [D]ecree[.]" *Id.* Mother now appeals.

## Analysis

[17] Mother argues that the trial court abused its discretion in: (1) denying her petition for further extension of time to submit proposed findings; (2) denying her petition for rule to show cause regarding Father's failure to timely pay child support; and (3) denying her request for attorney's fees.

[18] Typically, where, as here, the trial court issued findings of fact and conclusions of law, we apply a two-tiered standard of review. *Quinn v. Quinn*, 62 N.E.3d 1212, 1220 (Ind. Ct. App. 2016). First, we determine whether the evidence

supports the findings, and second, whether the findings support the judgment. *Id.* The trial court's findings are controlling unless the record includes no facts to support them either directly or by inference. *Id.* Legal conclusions, however, are reviewed *de novo*. *Id.* We set aside a trial court's judgment only if it is clearly erroneous. *Id.* "Clear error occurs when our review of the evidence most favorable to the judgment leaves us firmly convinced that a mistake has been made." *Id.*

[19] The dissolution decree here incorporates a property settlement agreement. We interpret settlement agreements under a *de novo* standard. *Copple v. Swindle*, 112 N.E.3d 205, 210 (Ind. Ct. App. 2018). Settlement agreements are contractual in nature and binding on the parties once "the dissolution court merges and incorporates that agreement into the divorce decree." *Id.* Therefore, the rules governing contracts are applicable when we interpret the terms of the agreement. *Id.* If the terms are clear and unambiguous, those terms "are deemed conclusive." *Id.*

## I. Denial of Request for Further Extension of Time

[20] We first address Mother's claim that the trial court erred in denying her request for additional time to submit proposed findings. A trial court has the discretion to grant or deny a continuance (or extension of time), and its decision will not be overturned on appeal absent clear abuse of that discretion. *J.P. v. G.M.*, 14 N.E.3d 786, 790 (Ind. Ct. App. 2014).

[21] "A general claim of being too busy to timely respond to another party's motion does not *require* a court to grant a motion for an extension of time to file a response, although it may *permit* a trial court to grant such a motion." *McGuire v. Century Surety Company*, 861 N.E.2d 357, 360 (Ind. Ct. App. 2007) (finding "[t]his is a situation in which the trial court could have granted the McGuires' motion for an extension of time, but it did not abuse its discretion in refusing to grant the motion"). Such is the case here.

[22] The record reveals that, on December 13, 2018, counsel for Mother moved for an initial extension of time to submit proposed findings. Counsel cited successive work deadlines, professional obligations, impending overseas travel, and family issues; the trial court granted the extension of time with no objection from opposing counsel. When counsel for Mother subsequently moved, on January 15, 2019, for further extension of time due to illness and dog bite injuries, the trial court denied the motion. We cannot say that the trial court abused its discretion by denying Mother's motion for further extension of time.

## II. Denial of Petition for Rule to Show Cause regarding Father's Failure to Pay Child Support

[23] Mother argues that the trial court abused its discretion in denying her petition for rule to show cause regarding Father's failure to timely pay child support. See Mother's Br. p. 17 ("The trial court erred in failing to find that [F]ather was delinquent in his child support obligation as the evidence established that he was never current since the entry of the [Agreed] [D]ecree."). The gist of Mother's claim is that Father freely deviated from the Agreed Decree to her

detriment.  In her brief, Mother argues as follows, regarding Father's payments of irregular child support:

> Father made initial payments of $37,230 in 2012 and 2013, then waited three years before paying a lump-sum of $108,021 in April 2016—notably *after* Mother petitioned to hold him in contempt for nonpayment of child support.  This was not in compliance with the decree's requirements – and Father admittedly never provided his tax returns to enable recalculation of support from his Excess Income.  Such a payment "schedule" amounts to Father "styling his own support schedule". . . .

Mother's Br. p. 23.  We agree.

[24]     "[W]hile Indiana courts have encouraged divorcing couples to resolve disputes amicably, they have also consistently distinguished property and maintenance agreements from agreements governing child support, custody, and visitation."  In fact, Ind. Code § 31-15-2-17 prohibits the modification of agreements regarding the distribution of property, but the statute does not contain the same prohibition regarding modification of child support or custody agreements.  *See Meehan v. Meehan,* 425 N.E.2d 157, 160 (Ind. 1981) (discussing the prior version of Ind. Code § 31-15-2-17); *see also Voigt v. Voigt,* 670 N.E.2d 1271, 1278 n.10 (Ind. 1996) ("[T]he same principles and standards [regarding the freedom to contract] cannot apply to child custody and support provisions of proffered settlement agreements."); *Mundon v. Mundon,* 703 N.E.2d 1130, 1136 (Ind. Ct. App. 1999) ("But where provisions are made in the interest of the support and custody of children, as opposed to those which merely set forth rights in property, our legislature and sound public policy dictate that the trial court must play a role, and a settlement agreement cannot be shielded from or circumvent the court's fulfillment of that duty.").  In fact, we have held that "the fact that the support order was entered pursuant to a property settlement and child

custody agreement . . . did not deprive [the father] of the right to seek modification and is of no consequence to the question of whether the support order should be subsequently modified." *Kirchoff v. Kirchoff,* 619 N.E.2d 592, 595 (Ind. Ct. App. 1993), *disapproved on other grounds by Merritt v. Merritt,* 693 N.E.2d 1320, 1324 n.4 (Ind. Ct. App. 1998). Consequently, it is clear that despite an agreement between the parents regarding child support, the child support order may be subsequently modified.

*In re Marriage of Kraft*, 868 N.E.2d 1181, 1187-88 (Ind. Ct. App. 2007) (citations omitted).

[25] The Indiana Child Support Guidelines provide that "where taxes vary significantly from the assumed rate of 21.88 percent, a trial court may choose to deviate from the guideline amount where the variance is supported by evidence at the support hearing." Ind. Child Support Guideline 1. Here, Father's unique tax situation[7] prompted the parties to negotiate a detailed methodology, including a formula, for calculating Father's irregular child support obligation. The trial court approved the parties' negotiated settlement agreement and incorporated it into the Agreed Decree, which set out the calculation method as

---

[7] As noted above, the Agreed Decree provides, with respect to calculating Father's irregular income:

> . . . Father's tax rate may and likely will be in excess of the presumed tax rate set forth in the Indiana Child Support Guidelines . . . . [T]he parties agree to adjust the calculation of Father's child support by adjusting the calculation to reflect the actual tax rate that Father pays each year on the disbursed and regular income used for his support obligation calculation, but not the tax rate that Father pays on his undisbursed income.

Appellant's App. Vol. II p. 50.

well as the parties' obligations and deadlines to be used going forward, unless either party sought a modification. *See* Ind. Code § 31-16-8-1.

[26] Indiana Code Section 31-16-8-1, governing modification or revocation of a child support or maintenance order, provides in part as follows:

> Provisions of an order with respect to child support or an order for maintenance (ordered under IC 31-16-7-1 or IC 31-1-11.5-9(c) before their repeal) may be modified or revoked.
>
> (b) Except as provided in section 2 of this chapter, and subject to subsection (d), modification may be made only:
>
>> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>>
>> (2) upon a showing that:
>>
>>> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>>>
>>> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

[27]     We initially note that this case was complicated by Father's failure to timely produce his tax returns to Mother.[8] Both accountants agreed that carrying back 2015 losses resulted in a tax refund and additional money in Father's pocket, but not in additional income.[9] The trial court and Mother, however, could not determine the impact of Father's amended tax returns as it related to calculation of Father's irregular child support obligation until Father produced his amended tax returns.

[28]     In the Agreed Decree, the parties evinced their intention to be subject to the following obligations and timeframes. Father was to: (1) pay Mother $235.00 in weekly child support based upon his base pay of $2,903.79 per week; (2) pay Mother twelve percent of his income in excess of $2,903.79 per week; (3) file his federal tax returns no later than November 1st of each year; (4) provide immediate notice of his tax filings to Mother; (5) execute an authorization to allow Mother to obtain his federal tax return directly from the IRS annually; and (6) provide his complete federal and state income tax returns, 1099s and K-1 forms to Mother; (7) the parties would then have thirty days to calculate Father's irregular child support obligation (accounting for support paid already by Father to Mother for the year 2013); and (8) Father would annually pay all irregular child support thirty days from the calculation of Father's irregular

---

[8] The parties have incurred attorneys' and accountants' fees in excess of $100,000.00.

[9] Father received a refund of approximately $400,000.00, of which Father paid approximately $108,000.00 to Mother. *See* Tr. Vol. II p. 187.

child support obligation, with any unpaid monies entered as a money judgment against Father.

[29] Here, the trial court entered the following findings of fact and conclusions of law in granting Mother's petition for rule to show cause *for Father's failure to timely provide Mother with his tax return*s and failure to pay additional child support as contemplated by the Agreed Decree:

> 9. Father failed to timely provide his 2013 and 2014 tax returns to Mother by the November 1, 2014 due date.
>
> 10. Credible evidence is lacking as to the date Father provided his 2014, 2015 and 2016 tax returns to [M]other.
>
> 11. Mother has met her burden of presenting evidence to establish that Father failed to provide his 2013, 2014, 2015, and 2016 tax returns to Mother in a timely fashion.

Appellant's App. Vol. II pp. 33-34. It is undisputed that Father did not adhere to this timetable in 2013, 2014, 2015, or 2016.

[30] When Father delayed production of his 2013, 2014, 2015, and 2016 tax returns, Father: (1) violated the Agreed Decree's express timeframes for Father's disclosure, the parties' calculations, and Father's payments to Mother; and (2)

made it impossible for Mother to adhere to, comply with, or rely upon the Agreed Decree and, thereby, frustrated the purpose of the Agreed Decree.[10]

[31] Father failed to abide by the Agreed Decree's stipulations regarding his irregular child support obligation. The evidence presented demonstrates that Father: (1) failed to provide immediate notice of his tax filings to Mother after he filed his federal tax returns that were due no later than November 1st of each year; (2) failed to timely provide his complete federal and state income tax returns, 1099s and K-1 forms to Mother; (3) failed to ensure that his irregular child support obligation was calculated by each party within thirty days of his production of his tax returns; (4) failed to timely pay irregular child support thirty days from the parties' calculation of Father's irregular child support obligation; and (5) failed to execute an authorization to allow Mother to obtain his federal tax return directly from the IRS. Father clearly violated the terms of the Agreed Decree.

[32] We are unmoved by Father's claims that he is not in contempt and that his conduct complied with the Agreed Decree because: (1) the Agreed Decree is

---

[10] At the evidentiary hearing on February 13, 2018, counsel for Mother stated the following in a colloquy with counsel for Father:

> I'm asking for your client to follow court orders informing me when he's filing in November 1st for his tax returns and then thirty days later to [ ], per the divorce Decree he's supposed to sign an authorization form from the IRS, which he never does. And then I'm asking for him, then he's supposed to pay whatever the calculation is from the formula of the 12% of the [irregular income]."

Tr. Vol. III p. 84.

silent regarding carrying losses back on one's taxes, (which had no effect on the amount of child support he owed based upon his irregular income); and (2) carrying losses back is permissible under the Internal Revenue Code. Neither of these facts has any bearing upon Father's obligation. Father was bound by the provisions of the Agreed Decree and failed to petition the trial court to modify child support before he began to pay irregular child support in a different manner than was prescribed in the Agreed Decree. To be clear, we agree with the trial court that Father was legally entitled to employ losses carried back for tax purposes.[11] For purposes of determining Father's irregular child support, however, Father was bound by the express terms of his negotiated agreement with Mother, and the amended tax returns did not change the amount of child support that was due to Mother.

[33] Father did not pursue modification of child support before he deviated from the Agreed Decree by untimely paying irregular child support. "One purpose of child support is to provide regular and uninterrupted support for the children." *Carpenter v. Carpenter*, 891 N.E.2d 587, 600 (Ind. Ct. App. 2008). The record reveals that, after Father's 2013 lump sum payment to Mother, Father did not make another payment of irregular child support until April 2016. Father clearly failed to abide by the provisions of the Agreed Decree by delaying

---

[11] The amended tax returns and losses carried back were irrelevant to the determination of Father's child support obligation and irrelevant to the timely payment of child support according to the Agreed Decree.

producing his tax returns in 2013, 2014, 2015, and 2016; as a result, his irregular child support was untimely paid in those years.

[34] For these reasons, the evidence does not support the trial court's denial of Mother's petition for rule to show cause for Father's failure to timely pay irregular child support; nor does it support the trial court's failure to find Father in contempt for his willful violation of the Agreed Decree. To the contrary, and as we have already discussed, the evidence establishes that Father repeatedly flouted his obligations and duties—enumerated in the Agreed Decree—regarding his irregular child support obligation. *See J.S. v. W.K.*, 62 N.E.3d 1, 7-8 (Ind. Ct. App. 2016) (affirming the trial court's contempt finding against father for his "failure to take necessary steps to direct checks to be automatically withdrawn and/or to timely and regularly pay his child support [ ] so that it is received when due"); *In re Paternity of Jo.J.*, 992 N.E.2d 760, 773 (Ind. Ct. App. 2013) (affirming the trial court's contempt finding and sanction for father's willful disobedience of the child support order and holding that "regularity and continuity of court decreed support payments are as important as the overall dollar amount of those payments").

[35] Thus, we find clear error and reverse and remand as follows. As sanction for Father's violation of the Agreed Decree, we remand to the trial court with instructions to: (1) enter a contempt finding against Father for his failure to abide by the terms of the Agreed Decree regarding irregular child support in 2013, 2014, 2015, and 2016; and (2) to determine whether contempt sanctions are appropriate.

### III. Overpayment

[36] Mother argues that the trial court clearly erred in finding that Father overpaid child support to Mother and in entering a money judgment against Mother for $20,483.23. Mother argues that: (1) "Father was delinquent in his child support obligation for the period December 1, 2013 through December 31, 2017"; and (2) Father did not make payments in the manner prescribed in the Agreed Decree, "rendering any overpayments voluntary contributions" or gratuitous. Mother's Br. p. 19.

[37] As to Mother's underlying claim that Father was delinquent in his child support obligation for the period from December 2013 through December 31, 2017, the trial court found as follows:

> 88. Father claims he paid $254,088.56 of support [for] 2013 through December 31, 2017. Mother's summary (Exh Q-1) claims Father paid $241,868.56 [in] support for 2013 through **December 31, 2016**. Father continued to have $235.00 per week ($235/wk X 52 weeks = $12,220) deducted from his income for 2017. Adding the 2017 support paid of $12,220 to Mother's acknowledged support amount paid of $241,868.56 through December 31, 2016 [yields] the same amount of support [F]ather claims he paid, namely $254.088.56 through December 31, 2017.

Appellant's App. Vol. II p. 30 (emphasis in original). Nothing in the record contradicts this finding; thus, we cannot say the trial court clearly erred in finding that Father was not delinquent in his child support obligation for 2013 through the end of 2017. This is not to say, however, that Father's payments complied with the Agreed Decree; they did not. Father failed to timely pay the

majority of his child support obligation. In fact, the evidence establishes that Father only paid five percent of his child support obligation on a timely basis.

[38] Next, we turn to Mother's claim that Father's overpayments should be treated as voluntary contributions because Father made non-conforming payments pursuant to the Agreed Decree. "The well-established rule in Indiana is that overpayments of child support are generally viewed as voluntary and gratuitous." *Eisenhut v. Eisenhut*, 994 N.E.2d 274, 276-77 (Ind. Ct. App. 2013). "[A]n obligated parent will not be allowed credit for payments not conforming to the support order." *Carpenter v. Carpenter*, 891 N.E.2d 587, 600 (Ind. Ct. App. 2008) (quoting *O'Neil v. O'Neil*, 535 N.E.2d 523, 524 (Ind. 1989)). *See Fiste v. Fiste*, 627 N.E.2d 1368, (Ind. Ct. App. 1994) ("It is the settled law of this state that the noncustodial parent is required to make support payments in the manner, amount[,] and at the times required by the support order, at least until the order is prospectively modified or set aside."), *disapproved on other grounds by Moyars v. Moyars*, 717 N.E.2d 976, 981 n.2 (Ind. Ct. App. 1999).

[39] There are two "narrow exceptions to this general rule." *O'Neil*, 535 N.E.2d at 524. Under one of these exceptions, credits for overpayment may be permitted regarding "technically non-conforming payments of a judicially declared support obligation[,] when proof is sufficient to convince the trier of fact that

the required payments *were actually made by the obligated party to the person entitled thereto*."[12]  *Id*. (emphasis added).

[40]   In *Castro v. Castro*, 436 N.E.2d 366, 368 (Ind. Ct. App. 1982), a child support dispute arose when the father paid the mother directly, instead of making his child support payments through the clerk's office as required by the court-ordered agreement.  When the clerk's office found the father to be in arrears, he sought and was granted credit for his non-conforming payments.  In affirming the trial court's grant of a credit to the father, we found that an exception to the general rule applied and reasoned that "[m]oney actually paid and received in discharge of a judicially declared obligation of support is just that."  *See Castro*, 436 N.E.2d at 368.

[41]   Here, as we have already found, the evidence supports the trial court's findings that: (1) Father's payments of irregular child support were non-conforming; however, (2) by the time of the evidentiary hearing, Father was current on his child support payments and had actually overpaid irregular child support to Mother.  Under the unique facts and circumstances of this case, we cannot say that the trial court clearly erred in finding that Father was entitled to relief for

---

[12] The second exception allows for credits for overpayment "where the obligated parent, by agreement with the custodial parent, has taken the child or children into his or her home, has assumed custody of them, has provided them with food, clothing, shelter, medical attention, and school supplies, and has exercised parental control over their activities and education for such an extended period of time that a permanent change of custody is demonstrated."  *Id*.  This exception is inapplicable here.

his overpayment where Father "actually paid" and Mother received in full the amount of irregular child support that was in dispute at the time.

[42] While Father is entitled to a credit, we disagree with the trial court as to the appropriate way to treat Father's overpayment. *See Edwards v. Edwards*, No. 19A-DR-509, slip op. at 4 n.1 (Ind. Ct. App. July 31, 2019) (approving trial court's award of a credit upon finding of overpayment by child support obligor), *trans. pending*; *Quinn*, 62 N.E.3d at 1222-23 (approving the trial court's entry of a credit upon finding of overpayment by child support obligor). Under the circumstances before us, the proper remedy for Father's overpayment of child support is a credit, not a money judgment against Mother. Thus, we find that Father is entitled to a credit in the amount of his overpayment *toward his future irregular child support obligation*. Accordingly, we vacate the trial court's entry of a money judgment against Mother and remand with instructions for the trial court to award Father a credit toward his future irregular child support obligation in the amount of $20,483.23.

### IV. *Attorney's Fees*

[43] Lastly, Mother argues that the trial court erred in failing to order Father to pay the attorney fees that Mother incurred in defending against Father's petition for an accounting, which Father withdrew, in open court, during the four-day evidentiary hearing. We afford trial courts broad discretion in deciding whether an award of attorney's fees is warranted. *See Russell v. Russell,* 693 N.E.2d 980, 984 (Ind. Ct. App. 1998), *trans. denied.* We will reverse a trial court's decision regarding attorney's fees only when we determine that it has abused this

discretion. *Stratton v. Stratton,* 834 N.E.2d 1146, 1152 (Ind. Ct. App. 2005). "[M]isconduct that directly results in additional litigation expenses may be properly taken into account in the trial court's decision to award attorney's fees." *Hanson v. Spolnik,* 685 N.E.2d 71, 80 (Ind. Ct. App. 1997) *trans. denied.*

[44] Here, Father filed a petition for an accounting of Mother's use of child support funds on April 26, 2016; at the close of the evidence, Father moved to withdraw the petition for accounting. *See* Tr. Vol. II p. 194. Under questioning by counsel for Mother, Father testified that he withdrew his petition for an accounting after he conducted discovery, weighed the evidence presented at the hearing, and concluded that he had not presented adequate evidence to support his claim that Mother misappropriated child support funds.

[45] In light of the foregoing, we find that Father simply withdrew his petition for accounting because he was unlikely to succeed on the merits. The decision appears to be a strategic decision that does not rise to the level of "misconduct." *See Hanson,* 685 N.E.2d at 80. The trial court did not clearly err in denying Mother's request for attorney's fees regarding the withdrawn petition for accounting.

## Conclusion

[46] The trial court did not abuse its discretion in denying Mother's motion for further extension of time or petition for attorney's fees. Nor did the trial court err in finding that Father overpaid Mother. As to these findings, we affirm.

[47] The trial court clearly erred in denying Mother's petition for rule to show cause for Father's failure to pay child support in accordance with the parties' Agreed Decree. As to this finding, we reverse and remand with instructions to: (1) enter a contempt finding against Father for his failure to pay child support as prescribed under the Agreed Decree for 2013, 2014, 2015, and 2016; (2) determine whether contempt sanctions are appropriate; (3) vacate the money judgment entered against Mother; and (4) grant Father a credit of $20,483.23 toward his future irregular child support obligation.

[48] Affirmed in part, reversed in part, and remanded with instructions.

Brown, J., and Altice, J., concur.